PUBLIC SERVICE RAILWAY COMPANY et al.

*v.*

THE BOARD OF CHOSEN FREEHOLDERS OF HUDSON AND ESSEX
COUNTIES.

[Decided December 1st, 1915.]

1. *P. L. 1906 p. 57*, providing that it shall be lawful for two or more counties in which a plank road or bridge of a company whose charter has expired lies to jointly rebuild, reconstruct, change the grade of, improve, and widen such road, and agree as to the proportion of the total expense to be borne by each, and that it shall be lawful also for the boards of chosen freeholders to agree with any street railway company using such road as to the share of the expense to be borne by it toward such improvement, and *P. L. 1910 p. 400*, providing that if a street railway or traction company shall change the location of its tracks at the request of the board or boards of chosen freeholders charged with the maintenance of the street, the company shall have the right to maintain and operate in the new location for as long a period as it had the right to do in the former location, do not authorize the boards of chosen freeholders of two counties in which a street railroad operates over a plank road acquired by the counties, to force the company against its will to change the location of its tracks, which are not dangerous or inconvenient, as the highway is, simply because the boards wish to reconstruct it, since the first act contemplates an agreement and the latter a request.

2. The section of the Freeholders act authorizing the boards of county freeholders to ordain, establish, and put in execution such by-laws, ordinances and regulations as shall seem necessary and convenient for the government of their respective corporations, does not authorize the boards to compel such a change in the location of the tracks, the section relating only to the internal regulation of the boards and not to their control of other persons or bodies.

3. The Traction act (*P. L. 1893 p. 302*), providing in section 6 that after description of the route of a street railroad is filed in the office of the secretary of state the company may apply for a location of its tracks to the common council or other body having control of the streets, and in section 7 that the location thus granted shall be deemed the true location of the tracks if an acceptance by the board of directors of the road shall be filed with the secretary of state, and in section 8, providing that any consent required to be given by a public body shall have the force and effect of a contract, does not authorize the boards of chosen freeholders to change the location of the company's tracks, there being no provision in the Traction act authorizing the public body to vary, of its own motion, the location of tracks which it has defined.

4. *P. L. 1902 p 566*, directing the boards of freeholders of two or more counties in which a plank road and bridge of a company whose charter had expired lay, to acquire, maintain and operate such road and bridge at joint expense, does not authorize such boards to change, against the will of a street railroad operating over such a plank road, the location of its tracks.

*Mr. Frank Bergen,* for the complainants.

*Mr. Benjamin F. Jones* and *Mr. Joseph M. Noonan,* for the defendants.

STEVENS, V. C.

The original object of the bill was to obtain an injunction restraining the defendants from moving the trolley tracks of complainant from the side to the middle of the plank road extending from Newark to Jersey City. Pending the application for an interlocutory writ an agreement was made that the work of improving and paving the plank roadway might proceed and that the location of the tracks might be changed, in accordance with the terms of a contract entered into between the joint boards and the contractor. The complainant agreed to remove its tracks, poles, wires and appurtenances to the middle of the highway and to pay for the cost of the work; it being stipulated that if, upon final hearing, it should

"be determined that complainants are or were not required by law, or bound to change the location of or to remove its railway, either temporarily or otherwise * * * then the freeholders should bear and pay such expense as the complainants shall have reasonably incurred in making such changes and relocation."

The work was done and the expense is stated to have been $41,914.98.

The freeholders say that they have the right to compel complainant to change the location of its tracks at its own expense. This the complainant denies.

The Newark Plank Road Company was incorporated in 1849. *P. L. 1849 p. 105.* Its life was limited to fifty years. It ceased to exist, except for the purpose of being wound up, in 1899.

*Grey, Attorney-General,* v. *Newark Plank Road Co., 65 N. J. Law 51, 603.* It was by its charter authorized to construct a plank road not exceeding sixty feet in width and, by a supplementary act, to construct bridges over the Passaic and Hackensack rivers. In 1866 (*P. L. 1866 p. 838*) it was authorized to build and operate a horse railroad and, in 1870, its time for doing so was extended five years. The railroad does not appear to have been built in accordance with the requirements of these supplemental acts.

In 1892, with or without lawful authority, it began to construct a street railway with two tracks, one on each side of the planked road. In 1893, its stock was purchased by the Consolidated Traction Company, which completed the work in 1893 and 1894. The Consolidated Traction Company then leased its own property and franchises to the North Jersey Street Railway Company, and this latter company entered upon the railway and filed a certificate and map thereof in the secretary of state's office pursuant, as I understand, to section 5 of the Traction Companies' acts. *P. L. 1893 p. 312.* In 1907, the North Jersey company and two others were consolidated into the complainant, which now operates the road.

In 1901, the plank road company itself became incorporated under the Traction act. *P. L. 1901 ch. 134.* In the same year, the legislature passed an act (*P. L. 1901 p. 292*) directing the board of chosen freeholders of any county in which a bridge owned by a plank road company, whose charter had expired was located, to acquire the same by purchase or condemnation. This act did not, apparently, meet the situation, for in the following year another act was passed (*P. L. 1902 p. 566*) directing the board of freeholders of two or more counties in which a plank road and bridge of a company whose charter had expired lay, "to acquire, maintain and operate such road and bridge at joint expense." Under the latter act, the boards of freeholders of Essex and Hudson counties obtained from the plank road company a conveyance of its plank road; the plank road company reserving to itself "the trolley tracks and the foundations on which the same rest and the right to operate their trolley traffic on such tracks over said road and bridges."

Under this act the power conferred was only "to acquire, maintain and operate" the plank road. But, in 1906, another act was passed (*P. L. 1906 p. 57*), which provided as follows:

> "It shall be lawful for such counties to jointly rebuild, reconstruct, change the grade of, improve and widen such road * * * and agree as to the proportion of the total expense thereof to be borne by each. And it shall be lawful also for such boards to agree with any street railway company using or hereafter using such road or roads as to the share of the expense thereof to be borne by it for and toward such improvement."

No agreement as to the share of the expense of the improvement was made. On the contrary, the boards conceiving that they could, without agreement, order the work to be done, adopted resolutions directing the removal of the tracks from the sides to the middle of the roadway and proceeded to carry their resolutions into effect by making the contract already referred to. Hence this suit.

All that the act of 1906 does is to authorize the boards to *agree* with any street railway company as to its share of the expense. There is no other act bearing directly upon the subject except the act of 1910 (*P. L. 1910 p. 400*) which provides that

> "if a street railway or traction company shall change the location of its tracks * * * *at the request* of the board or boards * * * charged with the maintenance and repair of the street or highway * * * the company so changing the location of its tracks, shall have the right to maintain and operate the same in the new location for so long a period as it had the right to maintain and operate the tracks in their former location."

The former of these acts, therefore, contemplates an agreement, the latter a request. Neither of them gives to the freeholders the right to order a change of location against the will of the traction company. If they have the right, it must be found elsewhere.

Counsel for the boards suggest that it is contained in that section of the Freeholders' act which authorizes them

> "to ordain, establish and put in execution such by-laws, ordinances and regulations as shall seem necessary and convenient for the government of their respective corporations."

But it is evident that this, in so many words, relates to their internal regulation, not to their control of persons or bodies extraneous to themselves.

It is not to be found among the ordinary powers of the boards, for the freeholders have never had any original jurisdiction over highways. That, for a long time, was given exclusively to the cities, towns and townships through which the roads were laid. Quite recently the freeholders have taken over the powers of county road boards, where such boards existed, but the acts directing the transfer have no application here.

No authority for their action can be found in the act to authorize the formation of traction companies. The Traction act, passed in 1893 (*P. L. 1893 p. 302*) provides that after a description of the route is filed in the office of the secretary of state (section 6), the company may apply for a location of its tracks. This latter application is to be made to the common council or other body having control of the streets or highways which may grant or refuse to grant the location applied for, in whole or in part, and may grant it under such lawful restrictions as the interests of the public may require; and the location thus granted, so section 7 provides, "shall be deemed and taken to be the true location of the tracks of the railway, if an acceptance thereof, in writing, by said directors shall be filed with the secretary of state within thirty days." *State, Theberath,* v. *Newark, 57 N. J. Law 309.* Section 128 provides that any consent required to be given by any public body shall have the force and effect of a contract. *Rutherford* v. *Hudson River Traction Co., 73 N. J. Law 227, 243.* There is no provision in the Traction act authorizing the public body, after it has thus defined the location, to vary it of its own motion.

Even under the broad grant of power usually conferred upon the larger municipalities to grade, pave, regulate and control the use of their streets, it may at least be doubtful whether under the course of decision in this state, a city having once granted a location of tracks may change it at will. *State, Hudson Tel. Co.,* v. *Jersey City, 49 N. J. Law 303; Wilbur* v. *Trenton Passenger Railway Co., 57 N. J. Law 212; Phillipsburg Electric Co.* v. *Phillipsburg, 66 N. J. Law 506; Fielders* v.

*North Jersey Street Railway Co., 68 N. J. Law 343.* The grant of power to regulate and control must be read in connection with the provisions of the Traction act. But the question is not what power do such municipalities possess, but what power do the freeholders? Not being among the ordinary powers of the freeholders, or in the Traction act, if it exists at all, it must be in the acts under which the plank road was acquired and held.

It can hardly be contended that the power was given by the act of 1902. That was a power to acquire, maintain and operate a *plank* road, and the deed transferring the plank road expressly excepted from the grant "the trolley tracks and the foundations on which the same rest." Under this act the boards acquired the same right to maintain and operate the road that the plank road company had.

The next act is that of 1906, which, as I have already said, authorizes the two boards to "jointly rebuild, reconstruct, change the grade of, improve and widen" the road. Here is a broader grant of power, but the draftsman of the act evidently had in mind the conveyance which, under legislative sanction, had transferred the plank road to those boards and had reserved the "tracks and foundations  .*   *   * and the right to operate the trolley traffic;" for he adds that "it shall be lawful for such boards to *agree* with any street railway company   *   *   * as to the share of the expense to be borne by it for and toward the improvement." The legislative scheme was, therefore, *agreement*—not the condemnation or appropriation, partial or entire, of the company's property. And the act of 1910 which is entitled "An act concerning the relocation of the tracks of the street railway and traction companies and companies owning and operating street railways," looks in the same direction; for it provides for a change in the location of tracks by a traction company *at the request* of the body charged with the maintenance and repair of streets. These provisions would be wholly unnecessary if the freeholders were at liberty to direct a change of location at their pleasure and without compensation made. The two acts taken together seem, very clearly, to indicate that in a case circumstanced like the present, at least, a general power to alter the location of tracks was not conferred. I do not say that the free-

holders may not, in the exercise of such police powers as they possess, order switches or rails that endanger or obstruct public travel to be changed. They may be nuisances. *Wilbur* v. *Trenton Passenger Railway Co., 57 N. J. Law 216.* All that is said is that the joint boards may not order the removal of the company's tracks from the place where they had, by contract, a right to be, and where they were neither dangerous nor inconvenient, as the highway then was, to another location, simply because the boards desired to reconstruct it, and because they thought that the new location would be a better one, in view of the new situation created by themselves. In so far as they appropriated the old location they were appropriating the complainant's statutory and contract rights there; and in so far as they were compelling removal of the tracks at the company's expense, they were impairing the value of, if not destroying, so much of its tangible property as was useful in the old location but incapable of use in the new. This the acts of 1906 and 1910 said, in effect, should not be done unless by agreement, or upon the company's initiative. Counsel for the freeholders rely upon the *City of Albany* v. *Watervliet Turnpike and Railroad Co., 108 N. Y. 14.* The case is not opposed to the views here expressed. Property of the company included within the city limits, as extended, was condemned by the city. The company took the compensation awarded to it. It was afterwards directed to change the location of its tracks in the street. The decision was that it could not complain because so ordered; for the cost of making the change was, presumably, included in the condemnation money.

Under the agreement made with the board, pending this controversy, it would seem that the company is entitled to the compensation therein stipulated.