[Civ. No. 9465.   First Appellate District, Division Two.—December 19, 1934.]

SIDNEY L. SMYTH, Appellant, v. HARRIS & DEVINE (a Copartnership) et al., Respondents.

S. M. Saroyan and J. Francis Shirley for Appellant.

Decoto & St. Sure for Respondents.

STURTEVANT, J.—The plaintiff commenced an action to recover damages for injuries suffered in an automobile collision. After all of the evidence had been received the defendants made a motion for a directed verdict. The motion was denied and the jury returned a verdict in favor of the plaintiff. The entry of judgment was stayed and thereafter the defendants made a motion that the verdict be set aside and judgment be entered in their favor notwithstanding the verdict. That motion was granted and from the judgment entered in favor of the defendants the plaintiff has appealed.

On the evening of March 11, 1933, the defendant Turner had driven a truck owned by the other defendants, his employers, from Modesto to Oakland. Having reached Oakland he drove the truck westerly on East Fourteenth Street to a point some distance west of Fifty-seventh Avenue. At that point he drove to the right-hand side of the street and parked the truck and trailer and alighted and went diagonally across the intersection to a coffee shop where he ate a sandwich. In a little while he returned to the truck, put out the lights, entered the cabin, removed his shoes, and went to sleep. Across the street there was an overhead street light which threw its rays from 50 to 75 feet. Turner

remained asleep in the cabin of the truck until after the accident had occurred.

In the meantime the plaintiff and his associates had held a whist party. At about 11 o'clock their host served them a hot toddy. Each had one drink. Between 1 and 2 o'clock in the morning the plaintiff and two young ladies left for their homes. In his 1929 model of a Ford convertible coupe, the plaintiff started to drive them to their respective homes. Eleanor Iverson was taken to her home near Sixty-sixth Avenue and East Fourteenth Street, where she alighted. Thereafter plaintiff and Kathleen Iverson proceeded to East Fourteenth Street, where they turned westerly and proceeded on the right-hand side. As the plaintiff drove westerly on East Fourteenth Street he passed a number of cars parked at the curb, clearing them by two or three feet. Approaching Fifty-seventh Avenue he changed his course and approached closer to the northerly curb. He was traveling between 23 and 25 miles per hour. The headlights of his car were illuminated, his windshield wiper was working, and he could see 30 to 60 feet ahead—clearly 30 to 40 feet. At the intersection of Fifty-seventh Avenue and East Fourteenth Street the illuminating vision of his headlights was cut down to from 20 to 30 feet ahead due to a large overhead illuminating light on the southwest corner of Fifty-seventh Avenue and East Fourteenth Street. As the plaintiff came into this intersection he was traveling about 25 miles per hour. Once in the intersection plaintiff slowed down to 20 to 22 miles per hour. Traveling at that speed under the atmospheric condition prevailing and the condition of the pavement the plaintiff testified that he could stop his car within 45 to 50 feet provided he did not skid. The night was dark, the pavement was wet, and a rain was falling at the time of the accident. The foregoing is a condensed summary of the testimony given by the plaintiff. The distances, it may be assumed, were his estimates as he was not asked if he had made any experiments or measurements. For seven or eight years before the accident he had been enlisted in the navy but had a local residence with his brother in Oakland. East Fourteenth Street is 72 feet wide and Fifty-seventh Avenue is 36 feet wide. The truck and trailer were painted blue and loaded with barrels. Their length over all was 54 feet 8 inches; to the top of the load was 11 feet. As

the plaintiff approached the spot the reflectors in the safety zone were seen and about the same time an automobile approached from the west. The light of that automobile to some extent shone in the face of the plaintiff. The plaintiff was looking straight ahead, but testified that he did not see the trailer until he was 8 or 10 feet from it. He then threw on his brakes but he was unable to avoid the collision. The record does not disclose that the plaintiff was unfamiliar with the locality where the accident happened and the territory immediately adjacent thereto.

The plaintiff asserts that the trial court erred in granting the motion of the defendants. The latter reply that the motion was properly granted because under the facts the plaintiff was guilty of contributory negligence. They summarize the facts as follows:

"That on the evening in question he was driving his automobile on a paved street, which pavement was wet; that the speed of his car varied between 20 to 25 miles per hour; that his car was equipped with headlights, illumination of which he could see from 25 to 40 feet ahead, depending upon other lighting conditions; that there was nothing between the front of his car and the rear end of the trailer at any time to obstruct his vision of the same; that he did not see the trailer until he was within 8 to 14 feet of the same; that at the time he saw the truck and trailer there was no obstruction of any kind in the street to the left of the truck and trailer which prevented his turning and passing said truck and trailer; that just preceding the accident he could see ahead from the illumination of his headlights a distance of 30 feet; that his car was equipped with brakes with which, traveling at a speed between 20 and 22 miles per hour, he could stop said car within 45 to 50 feet, provided he did not skid." Thereupon they cite and rely on *Ham* v. *County of Los Angeles,* 46 Cal. App. 148 [189 Pac. 462]. That decision is not controlling. The court was there considering an appeal from an order granting a motion for a new trial. In the instant case we are considering a motion for judgment notwithstanding the verdict of the jury. There is much difference between the power of the court when passing on a motion for a new trial and when ruling on a motion for judgment notwithstanding the verdict of the jury. (*Estate of Flood,* 217 Cal. 763, 768 [21 Pac. (2d) 579].) Further-

more, the defendants under the evidence never brought themselves within the doctrine stated by the court in *Ham* v. *County of Los Angeles, supra*. In that case the trial court had given a certain instruction. It was claimed that it had committed error in doing so. On page 158 [46 Cal. App.] the court said: ''Such instruction does not take into account *the degree of darkness of the night or known conditions of the road*. But we are not prepared to say that negligence may not be predicated, as a matter of law, irrespective of any positive law as to speed limits, where an automobile is being driven in the night on any part of the highway, and where the driver is dependent upon the lights of his machine for knowledge of the condition of the road and the traffic upon it, and runs into an obstruction, if he drives at a rate of speed which will not permit him to stop or slow up within the radius illuminated by his lights, and the accident is proximately caused thereby.'' (Italics ours.) That case was based on *Lauson* v. *Fond du Lac*, 141 Wis. 57 [123 N. W. 629, 135 Am. St. Rep. 30, 25 L. R. A. (N. S.) 40]. At page 59 [141 Wis.] the Supreme Court of Wisconsin said: ''The question for this court to solve is whether the driver of an automobile, who on a *dark, rainy night* is traveling over a straight stretch of *strange country* road, is exercising ordinary care if he drives his machine at such a rate of speed that he is unable to stop within a distance that is within the clear range of his vision. Stated in another way, if he can see objects but ten feet ahead, while he cannot stop his car in less than twenty feet, is he using ordinary care? If not, and injury results from his negligent act, neither he nor his passengers, if the conveyance be a private one, can recover damages for such injury.'' (Italics ours.) That the application of the rule depends on the question as to the degree of the darkness, and the driver's familiarity or unfamiliarity with the neighborhood in which he is driving, is shown by the decisions from which we have just quoted. The same distinction is noted in *Haynes* v. *Doxie*, 52 Cal. App. 133 [198 Pac. 39]; *Wurl* v. *Watson*, 67 Cal. App. 625 [228 Pac. 43]; *Gammon* v. *Wales*, 115 Cal. App. 133 [300 Pac. 988]; *Smarda* v. *Fruit Growers Supply Co.*, 1 Cal. App. (2d) 265 [36 Pac. (2d) 701]. It is settled law that the burden of presenting the defense of contributory negligence rests on the defendant. If these de-

fendants claim that the plaintiff was driving in a strange neighborhood they should have shown the fact. ■ In making the motion which they made certain presumptions and inferences stood in favor of the plaintiff. It is presumed that he was acting in the exercise of ordinary care. While himself exercising ordinary care he had the right to presume that the street in front of him would not be obstructed unlawfully or in such manner as to cause him injury. (*Gammon* v. *Wales, supra.*) Nothing to the contrary appearing in the record, we must assume the plaintiff was familiar with the street he was traveling and the condition thereof. Under all of these circumstances we are unable to say that the acts of the plaintiff, as a matter of law, constituted contributory negligence.

The judgment appealed from is reversed and the trial court is directed to enter its judgment on the verdict as returned by the jury.

Nourse, P. J., and Spence, J., concurred.