(No. 6973. May 12, 1942)

GARRETT FREIGHTLINES, INC., Respondent, v. JOHN SELL, Appellant.

(125 Pac. (2d) 1020)

L. E. Glennon, for Appellant.

F. W. Tydeman, for Respondent.

AILSHIE, J.—This is an appeal from a verdict and judgment awarding damages for injuries to respondent's truck and trailer.

Late in the afternoon of July 18, 1940, J. E. Shepherd left Twin Falls for Pocatello, driving respondent's truck and trailer "loaded with cheese and some miscellaneous freight." On nearing the town of Murtaugh, about sixteen miles east of Twin Falls, he noticed, through his mirror, "a car coming from the rear with a trailer house behind." He was driving about 30 miles an hour; and the driver of the car and trailer, approaching him from the rear, was driving "very little faster." According to the testimony of appellant, who was driving the rear car and trailer, he was moving at "approximately about forty miles an hour." Appellant followed the freighter for about a half mile and then pulled out to see if the way was clear for him to pass. They were both going in a southeasterly direction on U. S. Highway No. 30. Shep-

herd's account, of the trailer house passing, is substantially as follows:

"Well, when I noticed him [Sell] coming alongside of me there was four cars coming from the easterly direction, and I decided if something wasn't done there was going to be a collision there in the middle of the road. I drove the truck off to the right of the road, run along on the shoulder for a little ways. I noticed in the mirror the trailerhouse was still coming slowly. I drove off as far as I dared to, the left wheel being just barely on the edge of the oil, and the right wheels clear off on the gravel, and these other four cars kept coming, and Mr. Sell was coming from behind . . . . as we approached these cars coming from the opposite direction, Mr. Sells passed about that time, and as the trailer house got even with the front end of the truck *he cut in ahead of me* and the rear end of the trailer house struck the front wheel of the truck and knocked me in the ditch . . . . it just knocked the wheel out of my hand, and it went into the borrow pit . . . . the truck as it went into the borrow pit cut deep into the sand and dirt there, and cramped underneath and the truck turned over on its side." (Italics supplied)

The collision caused serious damage to the truck and trailer.

Shortly after the accident, and on the same day, appellant signed a statement relating to the manner in which the accident occurred, as follows:

"Murtaugh, Id.
July 18, 1940

"My name is John Sell, I am 47 years old married and live at Genoa, Ill. I own a 1936 Ford Sedan and a Schultz House trailer. On July 18, 1940, while enroute to Ill. with my family and while near Murtaugh, Ida. I was involved in an accident. I was driving in a Southerly direction on U. S. No. 30 at about 5:10 P. M. and came upon a large truck and trailer also going South. I honked my horn and seeing that the truck was proceeding in a normal fashion I proceeded to pass. When my car was about even with the truck's front end I noticed four cars coming from the South going North. I had plenty of time to pass the

truck and be back on my side of the road and still clear the first car but another car pulled out onto the West side of the road trying to pass the first North bound car and in order to avoid hitting this second car head on I had to cut in sharply ahead of the truck. I thought I had cleared the truck but after going down the road a ways my son who was looking out the window said the truck had gone in the ditch. I stopped immediately and found the truck had upset in the West barrow pit. I then noticed the right rear corner of my house trailer had been damaged where it had come in contact with the left front wheel of the truck. No one in my car was hurt in any way and I place the entire fault of the accident on the driver of the second North bound car who crowded me into the truck.

"I have *Red* the two *Pags* and it is true.

John Sell."

He afterward testified, on the trial, by deposition, and explained that he did not read the foregoing statement before signing it; and that some of the statements therein were incorrect in the following particulars: He said:

"There was other cars coming from the opposite way and I let them pass. . . . . I turned out to see if the road was clear in front of me and I seen it was."

(Note: These cars "from the opposite way" were not the "four cars coming from the South going North," which Sell noticed when he proceeded to pass the freighter.) At this time, he testified he "was going forty-five miles an hour." He denies having "cut in sharply ahead of the truck." His testimony, and that of his wife and fourteen-year-old son, was to the effect that Shepherd's truck started to travel faster as their car and trailer came up in passing. They observed no jolt or impact with the truck as they passed it; they went right on down the highway. However, the boy looked back and saw that the truck had "hit a driveway, and after it got over the driveway it tipped over." They were then about 200 to 250 feet past the truck.

It is argued that the evidence is not sufficient to prove negligence on the part of appellant. It seems to be agreed

by all the witnesses, that there were four cars approaching these trucks from the South, all in line on the right side of the road as they approached. A woman and man were in the front car ("Chevrolet" with "a 1938 Colorado license" plate). The next car was driven by a man named Nelson from Salt Lake, who testified by deposition, that there were cars following behind him. According to his testimony, when appellant's car pulled out of line, to pass the freighter, the driver of the Chevrolet threw on her brakes, skidded her car, and stopped off the oiled surface of the road, on the gravel shoulder. This was so sudden, it did not give Nelson time to stop his car, so he pulled ahead of the Chevrolet some fifty or seventy-five feet and stopped his car on the shoulder. As Nelson was making this distance, between the time he pulled out to pass the Chevrolet and stopped his car, he passed appellant's car and house trailer; and he says:

"there was plenty of room between the truck and my car when the trailer passed me. . . . . There was a good six feet beween the other car when he passed me."

In other words, the appellant's car and trailer passed between Nelson's car and the freighter and Nelson says there was about six feet between his car and the trailer. This would have given appellant room to get through *without cutting in ahead* of respondent's freighter.

 The crucial issue confronting the jury was: Did appellant act as a reasonably prudent man would have acted, under similar circumstances, in attempting to pass respondent's freighter, under the conditions confronting him. The jury found that he did not.

There was some conflict in the evidence as to the movements of the various vehicles, sufficient to justify the jury in concluding that Sell was negligent in attempting to pass respondent's freighter, when and while so many cars were approaching from the opposite direction. The jury evidently believed that Sell negligently "cut in ahead" of Shepherd and, as a result, the right rear corner of his trailer house collided with Shepherd's left front truck wheel, and threw the truck into the barrow pit. It is argued that the most that should be charged against appellant is an *error in judgment* and that,

" 'In time of imminent danger, a person is not necessarily negligent because he fails to take every precaution or adopt every means of safety that a careful calculation subsequently shows that he might have taken or adopted.' " (*Stuart v. McVey*, 59 Ida. 740, 747, 87 Pac. 2d 446.)

The trial court evidently had in mind the rule stated and instructed the jury as follows:

"You are instructed that a motorist confronted with a sudden peril, not arising from any fault of his own, may to avoid bodily harm to himself, act in the way the emergency seems to him to require, even though in so acting he injures another who in no way contributed to the condition creating the peril. But, before you should apply that rule in the case on trial, the evidence must clearly prove to you that an emergency, as claimed by the defendant, actually existed, that it was created through no fault of the defendant, and that the injury to the plaintiff could not have been prevented by the exercise of ordinary care on defendant's part after his condition of peril had passed."

So, it will be seen that the jury were apprised of the rule contended for by appellant and, with that instruction before them, have passed upon the issue adversely to appellant.

This case very well illustrates the dangers of attempting to pass a car moving in the same direction, while other cars are approaching from the opposite direction. The greater the number of cars approaching, the greater the danger in attempting to pass a car in front, because one can never foresee or predict whether, or when, one of them may attempt to pass the one ahead, and thus increase the hazards. It is all the more difficult to estimate the speed of an approaching car on a straight road. The driver, who attempts a passage, under such circumstances, should be chargeable with the exercise of a high degree of care. Here, appellant, in passing, was not only endangering the driver of the freighter he was passing and the approaching drivers, but also his own family who were in the car with him.

Appellant also assigns as error the ruling of the court in admitting testimony of Fred W. Ellis, offered

by respondent, for the purpose of establishing the amount of damages. This witness was shop foreman in the employ of respondent at its shops in Pocatello. Witness examined the truck and trailer and testified to the reasonable value of necessary labor and material in repairing the truck and trailer and putting them in condition for use.

Counsel for appellant objected to the introduction of this evidence, and at the same time stated what he conceived to be the rule as to the proof of damage in such case as follows:

"The measure of damages is the reasonable cost of the repairs, not in a lump sum—the jury has a right to pass upon each item of damage."

After some discussion between counsel and the court, counsel for appellant again stated: "The question is the reasonable value of the cost of repairing the truck; it is not a question of what anybody else charges for it."

Thereafter, evidence at considerable length was introduced, from various witnesses, as to the nature and extent of the damage to the truck and the reasonable cost of repairing it, the cost of getting it to a shop where the work could be done, and loss of time. The evidence appears to have all been introduced on the theory, that counsel's statement, of the rule governing the measure of damages in such case, was the correct rule. When the evidence was all in, appellant requested the court to give the following instruction, which was denied, and which denial is also assigned as error:

"You are instructed that the measure of damages, if you find from the evidence that the plaintiff is entitled to recover damages in this action, is the reasonable cost of repairs shown by the evidence, but such cost of repairs on either the truck or trailer must in no event exceed the diminution in market value of such vehicle due to the injury, if any, nor exceed the value of such vehicle as it was immediately before the injury."

No evidence appears to have been given as to the market value of the truck or trailer, either before or after the accident; nor was there any evidence of "the diminution in market value of such vehicle due to the injury,"

except in so far as that evidence was supplied by proof of cost of repairs. All the statements and discussions, as to the proper measure of damages, were had before the jury; and no substantial disagreement appears to have existed between counsel and the court over the rule of law. No specific instruction, however, was given to the jury as to the proper measure of damages; presumably because no material controversy had arisen over the rule as stated by counsel; all of which occurred in presence of the jury.

In view of the course respective counsel and the court pursued, in the introduction of evidence, and the further fact that the jury did not allow damages, to the extent proven by several hundred dollars, we feel bound to hold, that appellant was not prejudiced by the rejection of the requested instruction, or the failure of the court to give any instruction on the measure of damages; and furthermore, that it was not error to admit the proofs offered.

The rule announced by appellant's counsel, and acquiesced in by opposing counsel and the court, is substantially that announced by this court in *McGuire v. Post Falls Lumber & Mfg. Co.*, 23 Idaho 608, 614, 131 Pac. 654, wherein we held: "Where, however, the property is merely damaged and is capable of being repaired, the measure of damage should be the cost of repair together with the value of the use of the property during the time that it would take to repair it." This court approved the admission of evidence, under similar circumstances, in the recent case of *Baldwin v. Mittry*, 61 Idaho 427, 102 Pac. 2d 643, at 646.

In view of the instructions given by the court, we do not think there was any prejudicial error in the refusal to give appellant's requested Instructions Nos. 3 and 4.

The judgment is affirmed, with costs to respondent.

Givens, C.J., Budge, and Holden, JJ., concur.

MORGAN, J., concurring—Referring to the circumstances under which appellant attempted to pass respondent's truck, it is said in the opinion: "The driver, who attempts a passage, under such circumstances, should

be chargeable with the exercise of a high degree of care." If that language means a driver, under the circumstances referred to, should be required to exercise any higher degree of care than a reasonably prudent person would have exercised under like circumstances, I am not in accord with it. Otherwise I concur in the opinion.