The plaintiff-appellant was severely injured when the automobile which he was driving crashed into an upright pole maintained by the defendant in the center of Communipaw Avenue, Jersey City, about 250 to 350 feet east of the Hackensack River bridge. When the plaintiff rested, the County Court dismissed his complaint without calling for the defendant's evidence.
Across the bridge and along Communipaw Avenue runs the double-track street car line of the defendant. The tracks are laid in the middle of the bridge and of the highway. On the bridge, the usable roadway for trucks and other vehicles includes the surface where the tracks are laid; but leaving the bridge, the roadway divides into east and west lanes, separated by the tracks. The two roadways are paved with concrete and edged on the side toward the tracks with a curb, the top of which is six inches or so higher than the surface of the pavement. The part of the highway occupied by the tracks is paved with granite blocks from the bridge up to a very few feet from the pole into which the car ran. At that *Page 322 
point, the pavement on the center strip seems to end and thereafter there appears to be only an earthen surface between the two concrete roadways.
The pretrial order contains the defendant's admission that the pole was in the center of the highway. Despite the admission, defendant presses on our attention testimony of police officers in which they refer to the space where the pole stands as the defendant's "private right-of-way." What they meant by this term is not clear, and the source of their information is undisclosed. Counsel also refer to the opinion of Vice-Chancellor Stevens inPublic Service Ry. Co. v. Freeholders, 85 N.J. Eq. 290 (Ch.
1915), a suit in which the present appellant was not a party, but which related to the same highway that we are now considering. If we accept the opinion as evidence of the facts mentioned in it, the highway was once a toll road of the Newark Plank Road Co., a corporation of which the defendant, Public Service Coordinated Transport, is successor. In 1902, the Plank Road Co. conveyed the road to the boards of freeholders of Essex and Hudson Counties, reserving, however, the Company's trolley tracks "and the right to operate their trolley traffic on such tracks." The tracks at that time were on the side of the road and the center, where the tracks are now, was an unobstructed part of the highway used for general vehicular traffic. About 1915, the tracks were moved to the center of the highway pursuant to a contract between the two county boards and defendant, the terms of which are not given. The post with which plaintiff's car collided is not an accessory of the street car operation, although it looks like a pole of the kind commonly used to support trolley wires. But this post carries no wires; its only function is to carry a sign reading "Private Property."
It is obvious that the police and the tracks are within the lines of the highway. As only the plaintiff's case was heard, it is not surprising that there was no showing of any authority in the defendant to exclude public traffic from the part of the highway where the tracks are laid, or to erect or maintain there the pole in question. And it is not shown that the county boards consented, or had power to consent. Without *Page 323 
proof of a right to maintain the pole, we must consider it a public nuisance, an unlawful obstruction of the highway. The public right of passage is not limited to the part of a highway that is graded and paved, but extends to the whole width. One who places an unauthorized obstruction within the limits of the highway is liable to anyone who is specially damaged thereby, although the obstruction is outside of the traveled way. Opdyckev. Public Service Ry. Co., 78 N.J.L. 576 (E. A. 1909);Miller v. Pennsylvania-Reading Seashore Lines, 120 N.J.L. 172
(E. A. 1938).
The learned trial judge dismissed the complaint on the ground that the plaintiff's reckless conduct was the proximate cause of the accident.
The plaintiff, in the middle of the night, was driving from Newark to Jersey City. He had never travelled this road before, although it is a segment of the Lincoln Highway. He crossed the bridge on the eastbound trolley track at about 25 miles an hour, and as he left the bridge, he "stepped on the gas and the Volinsky car shot forward." There is no evidence, however, that he drove at a speed unusual or unreasonably high, considering that the hour was midnight and the place a main traffic artery. He continued straight ahead on the granite pavement, just at the end of which, unknown to him, stood the pole. A white line was painted on the floor of the bridge, dividing the traffic. It continued a few feet beyond the bridge and then forked, one line inclining to the right, the other to the left. Plaintiff did not notice the line and drove straight ahead. There was an electric street light at the end of the bridge; another light at the side of the road 100 feet or so from the bridge. There may have been a third light. Donsky, who was a passenger in plaintiff's car and who knew the road well, testified: "As we reached the end of the bridge, I suddenly looked up and it occurred to me to warn Volinsky about making that turn to the right, to get away from that pole; and before I could say anything, we had smacked into it. At that time did you see any warning of any kind? None at all. It looked like blackness ahead." Plaintiff testified that he did not see the pole at all. Now *Page 324 
we can put the critical question: Having the benefit of the street lights and his own headlights, was plaintiff's failure to notice the white traffic line, or his failure to see the pole and avoid it, such conclusive proof of negligent driving that no question of plaintiff's negligence remained for the jury? Plaintiff was not bound to keep a special lookout for obstructions in the highway; he had a right to assume that there was none. Saco v. Hall, 1 N.J. 377 (1949). In Sammak v.Lehigh Valley R.R. Co., 112 N.J.L. 540 (E. A. 1934), plaintiff, at 3:30 A.M., when it was misty and foggy, drove into a concrete signal tower that stood in the center of the highway. Our highest court spoke of the accident as occurring "without any negligence on the part of the driver." In Coan v. Public ServiceElec. Gas Co., 105 N.J.L. 501 (Sup. Ct. 1928), where plaintiff's car collided with an electric light pole erected in the highway, the court held that the question of plaintiff's negligence was clearly for the jury.
The defendant stresses the plaintiff's own testimony, "Well, after I got off the bridge, the next memory was in the hospital. I didn't even know I hit anything until I woke up in the hospital." From this it is argued that the plaintiff dozed at the wheel. Perhaps this is so; perhaps the plaintiff was only trying to state how sudden was the mishap.
We think the question of plaintiff's negligence should have been left to the jury. The judgment will be reversed.