WALSH v. CONSUMERS POWER COMPANY.

APPEAL OF CITY OF SAGINAW.

1. HIGHWAYS AND STREETS—MUNICIPAL LIABILITY FOR DEFECTS—
   STATUTES.
   The imposition of liability on a municipal corporation for injuries
   sustained by reason of negligence in keeping streets under its
   control in reasonable repair and in condition reasonably safe,
   fit, and convenient for public travel is made by statute, is
   limited thereby, and excludes recovery of damages under the
   common law (CLS 1956, § 242.1; CL 1948, §§ 242.3, 242.5).

2. SAME—MUNICIPAL CORPORATIONS—SUFFICIENCY OF BARRICADE—
   NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY—
   EVIDENCE.
   The city's compliance with statutory duty to maintain streets
   under its control in reasonable repair and in condition reason-
   ably safe, fit, and convenient for public travel and issue of
   contributory negligence of plaintiff operator of motor scooter
   were matters properly left to jury in action for injuries sus-
   tained when plaintiff went into unbarricaded 2'7" x 4'8-1/2"
   hole in city street at midday in mid-August some 15 minutes aft-
   er a barricade had been erected and less than 10 minutes after it

_____

REFERENCES FOR POINTS IN HEADNOTES
[1]  25 Am Jur, Highways § 349.
[2]  25 Am Jur, Highways § 449 et seq.

. · had been knocked down by codefendants, where there was testimony that barricades of similar type which had been erected during week previously had been knocked down, and that street had litter upon it and was shady in the vicinity of the hole, the failure to observe a possible difference in color between street surface and fresh cement not justifying finding of contributory negligence as a matter of law (CLS 1956, § 242.1; CL 1948, §§ 242.3, 242.5).

Appeal from Saginaw; Huff (Eugene Snow), J. Submitted October 3, 1961. (Docket No. 5, Calendar No. 48,683.) Decided December 28, 1961. Rehearing denied March 15, 1962.

Case by Thomas Gregory Walsh against Consumers Power Company, a Maine corporation, the City of Saginaw, a municipal corporation, and others for damages sustained when motor vehicle struck defect in street pavement. After settlement by other defendants, case tried as to city. Judgment for plaintiff. Defendant city appeals. Affirmed.

*Joseph J. Trogan,* for plaintiff.

· *Stanton, Taylor & McGraw (John W. McGraw,* of counsel), for defendant City of Saginaw.

CARR, J. Plaintiff brought this action in circuit court to recover damages for injuries suffered in a traffic accident as the result of alleged negligence on the part of the defendants. A settlement was reached between plaintiff and the defendants other than the city of Saginaw, pursuant to which the sum of $5,000 was paid to plaintiff and covenants not to sue were given by him. The case then proceeded against the defendant city. The jury returned a verdict of $2,500 in plaintiff's favor. Motions for judgment notwithstanding the verdict and for a new trial were denied, and the city has appealed claiming that the judgment entered on the verdict should

be set aside because of errors committed in the course of the trial, and that judgment should be ordered entered for appellant or a new trial granted.

The accident in question occurred on August 19, 1958, shortly after 1 o'clock in the afternoon. At the time plaintiff was driving a vehicle, referred to in the record as a Cushman motor scooter, in a southerly direction on South Washington avenue in the city of Saginaw. Said thoroughfare is a State trunkline highway approximately 40 feet in width, and is designated as M–13. Plaintiff was driving in the outside southbound lane and ran into an excavation in the street, which had been made by employees of the defendant Consumers Power Company approximately 1 week previously.

The street was paved with blacktop, and the excavation in question was 4' 8–1/2" north and south and 2' 7" in width. It was approximately 1–1/2 feet east of the west curb line of the street. Shortly before the accident fresh cement had been placed therein, which was leveled off and filled the excavation within a distance variously estimated by witnesses as between 2 and 6 inches from the top. Apparently a barricade, consisting of a board supported on either end by an upright, had been maintained on the north end of the excavation but was not in place at the time of plaintiff's injury. The testimony on the trial indicated that it was struck by motor equipment operated by defendant Stewart, an employee of Butterfield Canning Company, and thrown or propelled over the edge of the pavement on the west side of the street. An eyewitness of the accident indicated the situation in this respect in the following excerpt from his testimony:

"*A.* Well, what I observed was that there was a hole in the road and a concrete truck came up with a load of concrete to pour in that hole, fresh concrete, and then the Consumers Power men were there with

their truck and they leveled it off, and put a barricade up there, if that's what you are referring to, I saw them do that. * * *

"*Q*. All right. Now, you mentioned an accident. What happened in regard to that accident?

"*A*. Well, after the power company men had leveled that concrete off, they left it a little below the surface of the highway there, asphalt there. I imagine they left enough so that they could blacktop it, which they did later on, and they put a barricade up there, one of these horse shoes with a board across and hung a couple of lanterns on it, and then they drove away and they had only been gone maybe 4 or 5 minutes at the most when a semi came along and he struck that barricade and he knocked it off from over the hole onto the curb, and it left the hole open there without any barricade."

The witness further testified that he notified an employee of the Consumers Power Company who went with him to the vicinity of the excavation. However, before they reached that point the accident occurred. The proofs indicate that plaintiff ran into the excavation less than 10 minutes after the barricade had been struck and thrown from the pavement by the truck, or trailer, of Butterfield Canning Company.

It was the claim of the plaintiff, testifying in his own behalf, that he was exercising reasonable precautions for his own safety but that he did not see the excavation at all before running into it. He was at the time driving 18 to 20 miles per hour. He was familiar with the street and knew that men were working thereon. It was his claim that there was litter, or debris, scattered on the pavement and that it was shady in the vicinity of the excavation.

It is the claim of the appellant that under the proofs in the case the trial judge should have directed a verdict in its favor on the ground that actionable negligence on the part of the city had not

been established. Emphasis is placed on the fact that the length of time intervening after the barricade was knocked from its position and the occurrence of plaintiff's accident was of such short duration as to preclude any implication of knowledge of the then situation on the part of appellant. It does not appear that any officer or employee of the city was advised, until after the accident had occurred, that the barricade was not in its proper position.

Plaintiff relies on the admitted fact that the excavation had been made by Consumers Power Company approximately a week previously, that it had remained for the period indicated, and asserts that protection afforded the traveling public by the barricade was inadequate. The case was submitted to the jury by the trial judge on the theory that whether the city had exercised reasonable care to insure that the street should be maintained in a condition reasonably safe and fit for travel was under all the proofs a factual issue. As before indicated, it is the claim of appellant that the court should have found as a matter of law that there was no negligence on the part of the city constituting a proximate cause of the accident. It is not claimed that the charge was in any respect erroneous if the situation was such as to require submission of the question to the jury.

Plaintiff's action for damages against the city is based on section 1, chapter 22, of the general highway law of the State,* CLS 1956, § 242.1 (Stat Ann 1958 Rev § 9.591), which reads as follows:

"Any person or persons sustaining bodily injury upon any of the public highways or streets in this State, by reason of neglect to keep such public highways or streets, and all bridges, sidewalks, cross-

---

* PA 1909, No 283, as amended (CL 1948, § 220.1 *et seq.*, as amended [Stat Ann 1958 Rev § 9.1 *et seq.*]).

walks and culverts on the same in reasonable repair, and in condition reasonably safe and fit for travel by the township, village, city or corporation whose corporate authority extends over such public highway, street, bridge, sidewalk, crosswalk or culvert, and whose duty it is to keep the same in reasonable repair, such township, village, city or corporation shall be liable to and shall pay to the person or persons so injured or disabled, and to any person suffering damages by reason of such injury, just damages, to be recovered in an action of trespass on the case before any court of competent jurisdiction."

Section 3 of said chapter (CL 1948, § 242.3 [Stat Ann 1958 Rev § 9.593]) imposes the duty to maintain public thoroughfares in a condition reasonably safe and convenient for public travel, and section 5 (CL 1948, § 242.5 [Stat Ann 1958 Rev § 9.595]) bases liability exclusively on the statute, excluding recovery of damages under the common law. The primary question before us is whether the defendant city failed to observe its statutory duty with reference to the maintenance of the street in question. Its claim that it did not so fail necessarily raises the questions whether it may be said as a matter of law that the barricade was sufficient, that the city did not have notice, either actual or constructive, of a defective condition, and had no reasonable opportunity to remedy the defect.

That the city had notice of the condition obtaining from the time of the making of the excavation by Consumers Power Company until shortly before plaintiff's accident approximately a week later is scarcely open to question. On behalf of plaintiff, a witness called by him testified that barricades placed as warnings of excavations in the street had been knocked down a number of times as a result of being hit by motor vehicles at night. A picture of the barricade, taken by a member of the police depart-

·ment, was introduced in evidence before the jury and the conclusion might have been drawn therefrom, and from testimony of witnesses, that the type of barricade used was not sufficiently substantial in nature to afford proper protection to· the traveling public.

Counsel for appellant have cited *Welsh* v. ·*City of Lansing,* 111 Mich 589, in support of its claim that the trial court in the case at bar should have determined that the barricade was. sufficient as a matter of law. That case involved the right of plaintiff, a pedestrian, to recover for injuries sustained by falling into an excavation. It was shown that some measure of care had been taken to surround the excavation by planks laid upon barrels, and that one of said planks extended to an iron stair rail. It was further shown that the barricade had been placed in position on the night of the accident. No claim was made that it was not sufficient, and the court found that the facts were consistent with the theory that a part thereof had been removed by an unknown party, or parties. It may be noted also that the excavation involved in the cited case was not in the street but, rather, involved a part of the sidewalk and the space between the sidewalk and the adjacent building. Vehicular traffic was not involved.

In *Jones* v. *City of Lansing,* 273 Mich 623, also cited by counsel, the plaintiff ran into a safety island, or loading dock, abutting the north side of the street-car track in the center of East Michigan avenue in . defendant city. The platform of the safety island was 6′ in width, 40′ long, and extended 2″ above the pavement at one end, being flush with the street at the other end. At the east end of the platform there was maintained a cement block 24″ square with a cap surmounting it, the construction being approximately 33″ in height. A red globe was placed

on top of this block. Apparently at the time of the accident the light was out, but the proofs indicated that the street was well lighted, and that the loading dock could be readily seen without other illumination than was furnished by the street lights. It was held that under the circumstances presented there was no negligence on the part of the city, either in the construction of the loading dock or in the failure to discover that the light was out in time to restore it prior to the accident. We are not impressed that either of the decisions relied on by appellant is controlling under the proofs in the case before us. Under the situation disclosed by the testimony of the witnesses in the instant case we think that the trial judge was not in error in concluding that the question as to the city's compliance with the statutory duty resting on it was properly for determination by the jury.

Appellant further claims that the plaintiff was guilty of negligence as a matter of law in failing to discover the excavation in time to avoid running into it. No claim is made that plaintiff was driving at an excessive rate of speed. As pointed out in *Rytkonen* v. *City of Wakefield,* 364 Mich 86, 92, plaintiff was:

"entitled to assume the existence of a reasonably safe condition in the street ahead and that there would be ample warning of an unsafe condition, of the city's making, such as here existed." (Citing cases.)

As before noted, plaintiff claimed that the street was shady at the place where the accident occurred and that there was litter thereon. His claim as to the situation existing is indicated by the following excerpt from his testimony on cross-examination:

"*Q.* And were you looking ahead?

"*A.* Looking all along but that was all slopped up with slivers and this, that and the other, you ain't looking for a hole in the road.

"*Q.* What about slivers?

"*A.* Carpenter's things scattered around.

"*Q.* There were all sorts of—

"*A.* Litter, on the street.

"*Q.* Oh, there was all sorts of litter on the street, and did you see all that litter?

"*A.* Sure.

"*Q.* And the men were working around there, did you see them?

"*A.* Yes, until I come up to them, see them all bobbing around, naturally."

It is quite possible that plaintiff's attention was distracted to some extent by the conditions existing on the highway. It may be assumed that he did not expect to encounter an unguarded excavation in the pavement. The jury may have concluded from the proofs that the excavation had been filled with fresh cement within 2″ of the level of the pavement. Seated on his motor scooter and faced with the duty of observing traffic conditions generally, failure to observe a possible difference in color between the surface of the street and the fresh cement scarcely justifies a finding of negligence as a matter of law. The court was not in error in submitting the question to the jury.

The judgment of the trial court is affirmed.

DETHMERS, C. J., and KELLY, BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred.

OTIS M. SMITH, J., took no part in the decision of this case.