388 P.2d 988

**Norma DEWEY and Infants John Clyde Dewey, Kathleen Dewey, James Dewey, and Steven Dewey, by Norma Dewey, their Guardian Ad Litem, Plaintiffs-Appellants,**

v.

**Roy KELLER, Gem County and Robert Worley, Defendants-Respondents.**

No. 9241.

Supreme Court of Idaho.

Jan. 28, 1964.

Langroise, Clark & Sullivan, Boise, C. H. Higer, Emmett, for appellants.

Vernon Daniel, Payette, for respondent, Roy Keller.

Louie Gorrono, Emmett, for respondents Gem County and Robert Worley.

McFADDEN, Justice.

Plaintiff Norma Dewey is the mother and guardian ad litem of the minor plaintiffs, and the widow of John C. Dewey, who died from injuries received in an automobile accident December 11, 1957. This action was brought by Mrs. Dewey, seeking compensation for her loss and the loss of her children occasioned by Mr. Dewey's death. Her complaint charges negligence on the part of defendant Roy Keller in parking a house on a public highway during hours of darkness, without any lights, flares or other warning signals; the complaint also alleges defendant Robert Worley was a deputy sheriff of defendant Gem County, and that he was negligent in signalling traffic around the parked house, and in failing to place, or cause

to be placed, lights or other devices to warn of the obstruction, and that the county is responsible for his negligence. The county has waived its immunity against liability for damages pursuant to the law applicable at that time. (See S.L.1955, c. 146, §§ 1 and 2. Repealed S.L.1961, c. 330, and comparable section re-enacted by S.L.1961, c. 330, §§ 796, 797, incorporated into Vol. 7A Idaho Code, as §§ 41–3504 and 41–3505). The answers of the respective defendants generally denied the charges of negligence and asserted contributory negligence on the part of Mr. Dewey as the proximate cause of the accident.

Defendant Keller on December 11, 1957, was moving a 60 foot house, sitting on dollies, easterly on Highway 52 toward Emmett, Idaho. The tractor pulling the house broke down, leaving the house on the highway, totally blocking the south lane of the highway, and obstructing the north lane to the extent of about four and a half feet. Keller, in moving the house, had a truck acting as a "pilot car" to warn oncoming traffic of the obstruction, which truck was being driven by one Mary E. Heil, now Mary Keller. Keller replaced the broken-down tractor with a smaller one being carried on the truck. Before he could move the house, it was necessary to fill the radiator of the smaller tractor. Keller left Mrs. Keller to guide traffic around the house while he went for water. For that purpose she was using a flashlight, it being dark or dusk at the time.

About 6:00 o'clock, p. m., Deputy Sheriff Worley, in response to a call, went to the scene, expecting to find a house in the process of being moved, but instead found the house stopped on the highway. When he arrived at about 6:10 p. m., Keller had not yet returned, and Worley took charge. Keller returned shortly. Finding there were no flares, reflectors or warning devices in either the truck or the tractors, and having none in his own vehicle, Worley then radioed for assistance and the necessary equipment. Keller desired to move the house further down the highway, but Worley refused to permit him to do so. Keller upon his return to the house left his truck, facing the east, in front of the house; Worley placed his vehicle 75 to 100 feet east of the house, with lights focused on the house, and with the red flashing light of his vehicle burning. Worley directed Mrs. Keller to turn the truck lights off to avoid blinding drivers approaching the house from the east. Worley, using a flashlight to warn traffic, stood in the highway so he could observe traffic from both directions. Mrs. Keller also stood in the highway with her flashlight.

In the meantime, decedent John C. Dewey, who resided some miles further

west from Emmett, left his home in his Ford vehicle, accompanied by Stanley Harwell. They were going easterly toward Emmett in response to a relative's call concerning an injured child. As they approached the house, which, unknown to them, was blocking their lane of traffic, they observed a flashlight on the left side of the highway. Harwell stated he and Dewey figured someone might be having tire trouble. Shortly after they passed the flashlight, Harwell told Dewey, "There is a house!" The brakes were applied, but the car did not stop in time to avoid hitting the house, severely injuring Harwell, and fatally injuring Dewey. Worley and Mrs. Keller, at the time, were some 75 to 100 feet to the west of the house and had been signalling the Dewey car with the flashlights. It was totally dark at the time of the accident, and there were no flares, reflectors, or other warning devices indicating the presence of the obstruction.

The jury returned a verdict in favor of all the defendants, on which judgment was entered. It is from this judgment that the appeal was taken by the plaintiffs.

Plaintiffs assign as error the refusal of the trial court to admit in evidence the 1959 edition of the Idaho Drivers Handbook, an official publication of the Department of Law Enforcement. It was offered in evidence for the purpose of rebutting defendants' claim of decedent's contributory negligence.

■ For such evidence to be admissible it must be shown to be relevant and material. Plaintiffs urge that the handbook was admissible because the chart on the last page could be used as a means of estimating the speed of the Dewey vehicle to rebut defendants' charge of contributory negligence. This chart indicates the distance travelled by a car at various speeds when a driver is faced with an emergency stop. The chart shows the distance the vehicle would travel from the point where the driver first becomes aware of the danger, to the point where he first applies the brakes, this distance being referred to as "driver's thinking distance"; it also shows the distance the vehicle travels to a complete stop after application of brakes, this being referred to as "vehicle braking distance"; and by the addition of these two distances, the total distance required to bring the vehicle to a complete stop after the driver becomes aware of the danger.

Plaintiffs contend that Dewey's "thinking distance" is shown as follows. He became aware of the danger when his vehicle passed Worley (Harwell testified: "After we got by the light we saw the house, yes"). The skidmarks of the vehicle appeared on the surface of the high-

way. The distance between the skidmarks and the point where Worley was standing would thus be the "driver's thinking distance", and applying this measurement to the chart, plaintiffs claim the jury could then estimate the speed of the Dewey car.

The point where Dewey first became aware of the obstruction is not clearly established, nor does the record definitely establish whether the light he or Harwell observed was that of Worley or that of Mrs. Keller; nor is it definitely established where either of these two people were standing in reference to the actual distance from the house, or from the skidmarks. Plaintiffs offered the entire Handbook in evidence, not merely the chart. The court ruled that because of the many uncertain factors involved, admitting the handbook might mislead the jury. It was within the discretion of the trial court to determine if sufficient foundation had been laid to admit the chart. 5 Am.Jur.2d, Appeal and Error, § 881, p. 319; 5A C.J.S. Appeal and Error § 1644, p. 240. Examination of the record does not disclose any error by the trial court in refusing to admit this evidence.

Appellants next assign as error the giving of Instruction No. 12, which reads:

"I instruct you that the law recognizes that men are often confronted by and must act in emergencies. When a man is suddenly confronted by an emergency not due to negligence on his own part, if he acts as a reasonably prudent person under the circumstances would act, he cannot be charged with negligence because in such emergency he may not have done that which now can be seen may have prevented an accident. It is not a question of what was the safest or best thing to do. The question is what, under the circumstances, would a reasonably cautious and prudent person have done."

This court has recognized that this doctrine is applicable when one who, without fault on his part, is suddenly and unexpectedly placed in a perilous situation, so as to be compelled to act instantly and without an opportunity to exercise deliberate judgment. Under such circumstances he is not chargeable with negligence if in attempting to escape from the peril or to avoid or minimize the threatened injury he acts as a person of reasonable prudence would or might have acted in the same or similar situation. Wheeler v. Oregon R. R. etc. Co., 16 Idaho 375, 102 P. 347; Hamilton v. Carpenter, 49 Idaho 629, 290 P. 724; Stuart v. McVey, 59 Idaho 740, 87 P.2d 446; Lebak v. Nelson, 62 Idaho 96, 107 P.2d 1054; Garrett Freightlines v. Sell, 63 Idaho 738, 125 P.2d 1020; Barry v. Arrow Transpor-

tation Company, 80 Idaho 447, 333 P.2d 1008.

Plaintiffs properly contend this doctrine had no application under the facts in this case. For such doctrine to be applicable it is essential that the facts shall show a sudden emergency did exist. Barry v. Arrow Transportation Company, supra; Stuart v. McVey, supra; 8 Am.Jur.2d, Automobile and Highway Traffic, § 1030; Sadoian v. Modesto Ref. Co., 157 Cal. App.2d 266, 320 P.2d 583 (1958); Lubliner v. Ruge, 21 Wash.2d 881, 153 P.2d 694 (1944). Here no person charged with negligence or contributory negligence acted within the sudden emergency doctrine. Keller had been confronted with the problem of the house on the highway for some extended period of time prior to the collision and had full opportunity to deliberate upon the situation and determine the course of conduct he was to follow. And it was his acts that created the hazard. Worley appeared on the scene and took command of the situation for at least ten minutes before the accident occurred, and he had time for reflection, deliberation, and thought. Nor was the sudden emergency doctrine applicable to the decedent. Defendants charge Dewey with contributory negligence in failing to keep proper lookout and in driving at excessive speed. These charges are of continuing negligence, beginning at a point of time when his car allegedly went over the speed limit, sometime before arriving in the vicinity of the house, and continuing until the collision. Such alleged acts of contributory negligence were independent of any emergency.

The evidence shows that Dewey was not aware of the presence of the house until it was too late for him to have avoided the accident. Harwell testified that he and Dewey thought the light they saw was indicative of a person seeking help, not a warning of peril. The giving of this instruction was erroneous under these facts, and could easily have misled the jury.

Plaintiffs attack instruction no. 16. This instruction dealt with an issue presented by the answers of the respective defendants, Keller and Worley. Keller asserted that any negligence on his part had been superseded by the negligence of Worley when he took charge of the hazard on the highway. The instruction dealt with the issue of proximate cause of the accident and advised the jury among other things that if they should find from a preponderance of the evidence that Worley's acts were such as to break the causal connection of Keller's acts so that Keller's acts were not a proximate cause of the accident, they should find for Keller.

It is difficult to see where prejudicial error arose from the giving of this instruction. Under the issues presented by the respective parties' pleadings, it was essential to give such an instruction. It was for the jury to determine whether after the initial negligence of Keller there was a totally unanticipated, intervening and superseding cause which in fact became the proximate cause of the accident, and whether the antecedent negligence of Keller was therefore not the proximate cause or a contributing proximate cause of the accident. Chatterton v. Pocatello Post, 70 Idaho 480, 223 P.2d 389, 20 A. L.R.2d 783; Clark v. Chrishop, 72 Idaho 340, 241 P.2d 171; Smith v. Sharp, 82 Idaho 420, 354 P.2d 172; 2 Restatement of Torts §§ 440–442; 65 C.J.S. Negligence § 111; 38 Am.Jur., Negligence, § 67; 1 Shearman & Redfield, Negligence, §§ 37, 38; Annotation, 155 A.L.R. 157. Under the principles as announced by this court, before an intervening superseding cause of an accident can become the sole proximate cause of the injury, and thus relieve the first negligent wrongdoer of liability, such subsequent cause must have been unforeseen, unanticipated and not a probable consequence of the original negligence. Chatterton v. Pocatello Post, supra, and Smith v. Sharp, supra. The intervention of a third person's negligence or of other and new direct causes of injury does not preclude recovery against the original negligent actor if the injury was the natural or probable result of the original wrong. Carron v. Guido, 54 Idaho 494, 33 P.2d 345.

In Scrivner v. Boise Payette Lbr. Co., 46 Idaho 334, 268 P. 19, it was held that a subsequent independent act of negligence does not displace a former one as the proximate cause of an injury where the succeeding act is so connected with the first in time and nature as to make it plain that the damage was the natural and probable consequence of the original wrongful act or omission.

Having determined that this cause must be remanded for new trial, we deem it proper to point out, (I.C. § 1–205) that in giving of an instruction on the principles covered by instruction no. 16, the jury should be advised that before Keller could be exonerated by any acts of Worley, those subsequent acts must not have been reasonably foreseeable at the time of Keller's initial conduct, nor a natural or probable consequence of Keller's misconduct. The question of foreseeability and natural or probable consequence is a question of fact for the jury to determine. Care must also be taken that the jury is not misled into believing that only the acts of one person could be considered in resolving the problem of the proximate cause of the injuries; nor misled into believing that the combined acts of two or more

persons could not both be considered as proximate causes of the injuries.

Error is assigned to the trial court's refusal to give certain of plaintiffs' requested instructions. Requested instruction no. 3 recited in substance that it is the duty of those in charge of an obstruction or dangerous condition upon a public highway to mark it and place warning signs or signals to give ample notice to travelers upon the highway of the obstruction; that in the absence of such warnings or signs, the travelers have a right to assume the roadway to be safe and free from all except the usual traffic hazards. Requested instruction no. 4 was of the same tenor, but in addition advised that it is negligence per se to impede, block or obstruct a public road without adequately marking it or giving sufficient notice to warn oncoming travelers.

Plaintiffs refer to Pittman v. Sather, 68 Idaho 29, 188 P.2d 600, and Hoffman v. Barker, 80 Idaho 372, 330 P.2d 978, as authority for these instructions. In the Pittman case, an action was brought against contractors for damages caused by the collision of a motor vehicle with a stockpile of crushed rock left on a partially constructed and unopened highway, without warning lights or signs. As the roadway in that case had not yet been opened to the public, although it had the appearance of being open, the court refused to hold that it was negligence per se for the contractor to fail to place warning signs or visible markers on their stockpile. It was held, however, to be a question of fact for the jury whether such failure, under all the circumstances, was a failure to use due care and hence negligence under the circumstances.

In the Pittman case, supra, this court in discussing negligence per se, stated:

"Negligence per se is the violation of a statutory duty, or is such negligence as appears so opposed to the dictates of common prudence that a court can say as a matter of law, without hesitation or doubt, that no careful prudent person would have committed it." 68 Idaho 29, at 39, 188 P.2d 600, at 606.

Applying such principles to the facts in the instant case, the complete blocking in the nighttime of one lane of traffic and part of the other by a house, and failing to give warning to travelers, constitutes negligence per se. These principles announced in the Pittman case should have been covered in instructions to the jury, at least insofar as defendant Keller is concerned. Any negligence per se in existence at the time defendant Worley appeared on the scene could not be attributed to him, but his actions must be evaluated·

only in light of the events that took place subsequent to the time he assumed control. Any question as to whether his actions or omissions, if any, constituted negligence would have to be determined separately and apart from the charge of negligence per se attributable to defendant Keller.

 The principle of law also discussed in Pittman v. Sather, supra, dealing with the right of a member of the traveling public, in the absence of warnings, to assume a highway free from all but the normal traffic hazards likewise should have been covered by a proper instruction. It is a well established rule that persons using a public highway which is in constant use, and when their attention has not been called to any obstructions or peril thereon, have a right to assume, and act upon the belief, that the way is reasonably safe for ordinary travel, whether they are traveling at night or in the daytime. Such persons are not bound to anticipate unusual dangers or the presence of unlawful obstructions when there is nothing to put them on guard or notice. Mathis v. Nelson, 79 Ga.App. 639, 54 S.E.2d 710 (1949); Volinsky v. Public Service Coordinated Transport, 5 N.J. Super. 320, 68 A.2d 894 (1949); Doherty v. Romano, 4 N.J.Misc. 940, 135 A. 62 (1926); Smyth v. Harris & Devine, 3 Cal.App.2d 194, 38 P.2d 862 (1934); Morgan Hill Paving Co. v. Fonville, 218 Ala. 566, 119 So. 610 (1928); Johnson v. Updegrave, 186 Or. 196, 206 P.2d 91 (1949); Winder & Son v. Blaine, 218 Ind. 68, 29 N.E.2d 987 (1940); Gutierrez v. Koury, 57 N.M. 741, 263 P.2d 557 (1963); Dawson v. Seashore Transp. Co., 230 N.C. 36, 51 S.E.2d 921 (1949); Davis v. Fitzpatrick, 150 So.2d 322 (La.App.1963); Walsh v. Consumers Power Co., 365 Mich. 253, 112 N.W.2d 448 (1961); Huddy Cyclopedia of Automobile Law, Vols. 9–10, §§ 242, 245; Blashfield Cyclopedia of Automobile Law & Practice, Vol. 2A, p. 94, Vol. 4, part 2, pp. 227, 243, Vol. 5A, p. 387; 40 C.J.S. Highways § 268, p. 317; 25 Am. Jur., Highways, § 461, pp. 749–750.

Mathis v. Nelson, supra, reflects a statement of the general rule in this respect as pertains to a motorist carefully operating his vehicle wherein it is stated at page 713 of 54 S.E.2d:

> "A motorist upon the public highways of this state has a right to assume that the road ahead of him is clear and it may be generally stated that any person responsible for the obstruction of a highway is under the duty to exercise proper care that approaching motorists are warned of such obstruction."

It was prejudicial error not to have given such instructions to the jury, outlining the principles of law discussed above.

**518**

Plaintiffs assign error in the refusal of the trial court to be given requested instruction no. 10, which was to the effect that there was a presumption that decedent was exercising due care. No error appears in refusal to give this instruction. The principle of law outlined in such instruction is properly applied only where there are no witnesses or external evidence to indicate what the conduct of the decedent might have been immediately prior to his death. Where the details of an accident are available through eye witnesses or other external evidence, the purpose of the presumption is served and the necessity for such instruction is removed. Lallatin v. Terry, 81 Idaho 238, 340 P.2d 112; Neff v. Hysen, 72 Idaho 470, 244 P.2d 146; Van v. Union Pacific Railroad Company, 83 Idaho 539, 366 P. 2d 837.

Error is assigned in the refusal of the trial court to give plaintiffs' requested instruction no. 16, to the effect that even though decedent might have been driving over the lawful rate of speed, it was also necessary to find such speed was a proximate cause of the accident in order to charge decedent with contributory negligence. No error appears in the refusal to give this instruction. The court by its instruction no. 18, after setting out the statutory law in respect to speed, properly instructed the jury:

"The provisions of this instruction declaring prima facie speed limitations shall not be construed to relieve a person claiming excessive speed on the part of another person from the burden of proving that such excessive speed was the proximate cause of the accident."

The court also by instruction no. 6 defined proximate cause and by instruction no. 8 defined contributory negligence. These instructions sufficiently advised the jury of the principles outlined in plaintiffs' requested instruction no. 16.

The final assignment of error is directed to the trial court's denial of plaintiffs' motion for new trial. It is our conclusion that the errors previously discussed in this opinion are of such a prejudicial nature that a new trial must be granted. Further discussion of this assignment thus becomes unnecessary. The judgment is reversed and the cause remanded with instructions to grant a new trial.

Costs to appellants.

KNUDSON, C. J., and McQUADE, TAYLOR, and SMITH, JJ., concur.