HARRY G. FLORKE, appellant, v. CARL PETERSON, appellee.

No. 48517.

(Reported in 65 N.W.2d 372)

1032

JULY 26, 1954.

Pendleton & Pendleton, of Storm Lake, and Prince & Guthrie, of Webster City, for appellant.

Burnstedt, Hemingway & Hemingway, of Webster City, for appellee.

SMITH, J.—While driving east on U. S. Highway 20 plaintiff, driving a Chrysler automobile, started to pass a county gravel truck driven by defendant in the same direction. At about the same time defendant made a left turn at a T-intersection of the highway with a dirt road going north. A collision occurred and plaintiff brought this action for the resulting damage.

Defendant, at the close of plaintiff's evidence, and again after all the evidence was in, moved for a directed verdict claiming plaintiff was guilty of contributory negligence under section 321.304, Iowa Code, 1950, in attempting to pass within 100 feet of an intersection. The motions were overruled. A verdict was returned for plaintiff. Defendant then filed a motion for judgment non obstante veredicto urging the same ground. It was sustained, the court saying: "At the close of the evidence the court was clear that the plaintiff was contributorily negligent in trying to pass defendant within 100 feet of the intersection. But to avoid the necessity of another trial in the event of error, although it seemed a nonsuit had to be, the case was submitted to the jury." This appeal by plaintiff followed.

I. We approve the trial court's procedure. A verdict for defendant might entirely avert appeal; and the verdict for plaintiff serves to avoid the necessity of retrial in the event of reversal. The procedure conforms to the spirit of rule 243(b), R. C. P. See Rules Committee and Author's Comments, 3 Cook, Iowa Rules of Civil Procedure, 23. It is in line with the purpose of the legislation under which the rules were conceived—"promoting the speedy determination of litigation upon its merits." Sections 684.18, 684.19, Iowa Code, 1950.

II. The sole question here concerns the issue of contributory negligence. There is no substantial conflict in evidence as to the movements of the vehicles. Code section 321.304 provides:

"No vehicle shall, in overtaking and passing another vehicle * * *, be driven to the left side of the roadway under the following conditions: * * *

"2. * * * when approaching within one hundred feet of or traversing any intersection * * *."

▮ We have consistently held that violation, without legal excuse, of a statute which prescribes the care required under given conditions constitutes negligence per se. Faatz v. Sullivan, 199 Iowa 875, 883, 200 N.W. 321, citing earlier cases; Kisling v. Thierman, 214 Iowa 911, 243 N.W. 552; Dillon v. Diamond Products Co., 215 Iowa 440, 245 N.W. 725; Falt v. Krug, 239 Iowa 766, 773, 32 N.W.2d 781; Wilson v. Long, 221 Iowa 668, 671, 266 N.W. 482. See 65 C. J. S., Negligence, section 19c(2)(a), page 418; 38 Am. Jur., Negligence, section 196.

III. Plaintiff concedes the legal proposition just referred to and that he failed to obey the mandate of Code section 321.304. But he claims there was substantial evidence of "legal excuse" for his failure. He argues there was evidence the view of the intersection was obscure because corn was "growing in such a manner as to obstruct the view of a motorist and prevent the identity of the intersection"; that "corn was planted right up to the corner on the north side of the road."

Plaintiff's wife and young daughter sat with him on the front seat as he drove. The daughter testified she thought the lane to the north "was just a farm lane."

His wife said she did not notice the road to the north "until we got right up close * * * it would not be farther than 100 feet * * *. It is raised a little. * * * it just looked like it was going up into—well, you might say like a farm lying far off, or just like an old off-road, as I would call it, not no main traffic." Later she explained "it appeared to be a farmer's lane. I was probably 25 or 30 feet distant from the road before I could ascertain that it was a gravel road."

Plaintiff, on direct examination, testified positively ("absolutely") he was "watching for intersections" and did not observe this one, "I did not know that a road went north from number 20 until we were right up on it."

On cross-examination however he answered: "Q. If anyone had looked you could not help but see it? A. I thought it was a lane. * * * Q. If you had looked before, you could have seen it, couldn't you? A. I suppose so, yes. Q. You couldn't help but see it, isn't that right? A. Yes. Q. Anybody could see that road if they had looked a quarter of a mile away? A. I wouldn't say that you could because there is a cornfield there.

* * * Q. If you are looking around at the north side of Highway 20 you can see that a road comes in from the north at the place of the accident at least 1000 feet back from the corner? A. Not too plainly. Q. But you can see it, it is not different from the others? A. No."

After some further testimony to the effect there was no highway sign ("They generally put signs there, they have a dead-end sign * * * in Missouri and in Iowa") plaintiff was again asked and answered: "Q. But at least you could have seen it had you looked for at least 1000 feet? A. Yes. Q. And the reason you didn't see it * * * was maybe you were watching the truck, is that right? A. I had a plain view. There was no oncoming cars. Q. But you could have seen it had you looked, isn't that right? A. Yes." On redirect he was asked whether he meant he could identify from 1000 feet back that there was a road going north, he answered "No, sir. * * * I thought it was a country road." And in response to his attorney's leading questions (not objected to) he said he was not able to tell the difference "whether it was a lane into field or farm or highway", that there was no yellow line and that he observed nothing within a distance of 150 feet "that would distinguish it from an ordinary lane as distinguished from a roadway."

On re-cross-examination his answers were vague and somewhat evasive—"not too plainly", "that ain't too much of a highway there", "there was no dead-end road signs." And on another redirect examination in answer, "yes and no" fashion to several leading questions, he testified he meant that approximately 800 or 1000 feet back it was possible to see "the elevation or lead-in from the north" but that there was no way to identify whether it was "a lane or road."

We have set out at some length the testimony on plaintiff's behalf bearing on the question of his claimed "legal excuse."

IV. The evidence is not sufficient to pose a jury question. We have in earlier cases classified "legal excuse" in four categories: 1. Anything that would make compliance with the statute impossible. 2. Anything over which the driver has no control which places his car in a position violative of the statute. 3. An emergency not of the driver's own making by reason of

which he fails to obey the statute. 4. An excuse specifically provided by statute. Kisling v. Thierman, supra, 214 Iowa at page 916, and Amelsburg v. Lunning, 234 Iowa 852, 857, 14 N.W.2d 680. For other statements of what constitutes legal excuse, see 65 C. J. S., Negligence, section 19h; Larkins v. Kohlmeyer, 229 Ind. 391, 98 N.E.2d 896, 900; Bush v. Harvey Transfer Co., 146 Ohio St. 657, 67 N.E.2d 851, 855.

■ The trial court instructed in effect that plaintiff might be excused if the evidence showed that it was *reasonably* impossible for him to comply. And plaintiff argues that since there was no exception taken to that instruction it is the law of the case and we must measure the evidence by it.

The contention is unsound. Rule 243(b), R. C. P., already referred to, expressly permits a judgment notwithstanding verdict if the movant was entitled to and moved for a directed verdict at the close of the evidence. The rights of the parties are fixed as of that time. Defendant was not required thereafter to co-operate or collaborate (by either exception or request) in formulating correct instructions for proper submission of the very issue he claimed should not be submitted at all. Having made his record he could stand on it, taking his chance, of course, on a possibly erroneous instruction being the "law of the case" if his motion to direct was eventually found not good and his motion for verdict notwithstanding was not sustained.

That was the chance he took, not the possibility that an erroneous instruction on "legal excuse" might on appeal become substituted for a correct definition. This is but another way of saying the court could not, by erroneous instruction, after overruling the motion for directed verdict, change the test by which the correctness of his ruling would be measured.

We have examined the authorities cited by plaintiff but do not deem them in point.

V. Plaintiff must base his claim of "legal excuse" upon some one of the four categories already enumerated at the beginning of Division IV, supra. He seems to have selected category 1—that the conditions were such as to make compliance with the statute impossible. Passing for the moment the admissions and uncertainties in his own testimony, it is proper to

consider some undisputed evidence as to the physical facts and visual situation at the intersection.

The width of the highway (No. 20) is 100 feet and of the pavement 18 feet. From the north edge of the pavement to the fence along the north side of No. 20 is 42 feet. The road leading north from the intersection is 64½ feet wide from fence to fence. The top of its grade was 18 inches to two feet higher than the level of the pavement on Highway No. 20 at the intersection. It slopes gradually from the north side of Highway No. 20 down to the north edge of the pavement. One entering the intersection from the north crosses the ditch along the north side of Highway No. 20 over a sort of tile culvert. As already shown, plaintiff himself finally testified under his own attorney's examination that it was possible to see the "elevation or lead-in" 800 or 1000 feet back. The county maintainer said, "There was gravel on the portion of the road from the pavement up north to the fence line." That would be a distance of 42 feet.

Plaintiff's evidence, including his own contradictory testimony, even when appraised in a light most favorable to his contention, disclosed no physical differences between this and many other ordinary T-intersections. The fact that private lanes may sometimes have an appearance similar to highway intersections making identification more difficult cannot be a legal excuse for failure to comply with an express statutory requirement.

The ban against passing at or near intersections is not of common-law origin making its violation mere *evidence* of negligence, depending on the circumstances of the particular case. The legislature has instead imposed on hurried motorists an absolute duty, in addition to the common-law requirement, to exercise reasonable care under the existing conditions of the specific case.

The fact that courts recognize there may be a "legal excuse" for statute violation is quite different from permitting the violator to invoke the common-law rule of reasonable care or the care which a reasonably prudent man would exercise under like circumstances.

The Ohio Supreme Court has made the distinction: "Since the failure to comply with * * * a safety statute constitutes

negligence per se, a party guilty * * * cannot excuse himself * * * by showing that 'he did or attempted to do what any reasonably prudent person would have done under * * * similar circumstances.' A legal excuse * * * must be something that would make it impossible to comply with the statute * * *." Bush v. Harvey Transfer Co., 146 Ohio St. 657, 664, 665, 67 N.E.2d 851, 855, 856; Simko v. Miller, 133 Ohio St. 345, 13 N.E.2d 914.

"Evidence of due care * * * does not furnish an excuse or justification for the negligence presumed to arise on proof of violation of the ordinance." Gallichotte v. California Mut. Bldg. & Loan Assn., 4 Cal. App.2d 503, 506, 41 P.2d 349, 351.

We must conclude here there was no evidence to carry the case to the jury. It was a question not of *freedom from,* but of *legal excuse for,* contributory negligence. There was nothing shown that made compliance with the statute impossible, nothing over which plaintiff had no control that placed his car in a position violative of the statute, nor any emergency not of his own making by reason of which he failed to obey it.

The statute demands something more than "ordinary care"; or, perhaps more accurately, it increases the requirements of ordinary care. Before starting to pass a vehicle in front of him the driver must make sure he is not "approaching within one hundred feet of or traversing any intersection." Perhaps the legislature should require some sign or signal to enable impatient motorists more readily to discover or identify these danger spots. But until it does they must so drive as to be able to determine the fact without such aid.

The decision of the trial court must be and is affirmed.—Affirmed.

All JUSTICES concur.