[Civ. No. 9184. Third Dist. Jan. 29, 1958.]

ANTRANIG V. SADOIAN et al., Appellants, v. MODESTO REFRIGERATING COMPANY (a Corporation) et al., Respondents.

James C. Janjigian and Taylor, Taylor & Taylor for Appellants.

Wallace, Garrison, Norton & Ray, Maynard Garrison, Reginald S. Laughlin, Matt Goldstein and Robert Fowler for Respondents.

SCHOTTKY, J.—Plaintiffs are engaged in growing, buying, packing, storing, marketing and shipping grapes. Defendant Snowden is an individual doing business as Snowden Chemical Company, engaged in the business of gassing grapes. Defendant Modesto Refrigerating Company is a public cold storage warehouseman, and thus is a public utility and also a food warehouseman under the Public Utilities Act and Food Warehousemen Act. Defendant Condrey is sales manager of that company and represented defendant Modesto Re-

frigerating Company in the negotiations with Sadoian Brothers for the storage of grapes.

This action is based upon alleged negligence of defendants in failing to fumigate or gas 12 carloads of plaintiffs' grapes at regular 10-day intervals while they were in cold storage in a warehouse at Modesto Refrigerating Company. The complaint alleges that 12 carloads of plaintiff's grapes were placed in the cold storage plant of Modesto Refrigerating Company with the "express agreement" that defendant "would provide for thorough gassing of same with $SO_2$ gas at regular 10-day intervals during the entire period of storage," that "defendant, Modesto Refrigerating Company, employed the defendant, Snowden Chemical Company, to provide necessary fumigation services and gasses in the premises," that defendants negligently failed to maintain any 10-day interval schedule of gassing, and as the result plaintiffs' grapes "were caused and permitted to suffer extensive deterioration, rot and decay," and that plaintiffs suffered loss and damage in the sum of $17,607.17.

It was stipulated that the grapes were maintained under proper temperature and humidity conditions at all times, and since it is not controverted that the gassings that were made were all properly made, the only basis of the action was that the gassings were not made at sufficiently frequent intervals.

The answers of defendants each include denials of any negligence on their part, and each affirmatively sets up the defense of contributory negligence on the part of plaintiffs.

The 12 cars were received at the warehouse in 1952 as follows: Oct. 18—2 cars; Oct. 23—2 cars; Oct. 25—2 cars; Oct. 27—2 cars; Oct. 28—2 cars; Oct. 29—1 car; Nov. 3—1 car. All the gassings that were made were made by Snowden, and Modesto Refrigerating Company did not make any gassing whatever. The grapes were fumigated on five occasions, commencing October 30, 1952, at intervals of 22 days, 13 days, 20 days and 16 days. On October 29th Modesto Refrigerating Company notified plaintiffs that the grapes had not yet been gassed in the warehouse. A conflict exists as to that conversation between George Sadoian and Mr. Condrey.

Sadoian testified that Condrey asked him who he (Sadoian) preferred to do the gassing, and Sadoian then suggested that he preferred Snowden. Condrey then replied that he would contact or get Snowden to do the gassing. Sadoian testified that he expected Condrey to make the arrangements regarding the gassing, and that Condrey had agreed to do so. He would not admit that he had instructed Condrey to engage Snowden,

but rather that he had merely suggested a preference for Snowden.

Defendant Condrey's version of that conversation is that he called attention to the fact that the grapes had not been gassed and Sadoian replied that he (Sadoian) would take care of it, and on the following day, without any further action on the part of Modesto Refrigerating Company or any contact by Modesto Refrigerating Company with Snowden, the grapes were gassed by Snowden. Condrey also testified that in September, 1952, he informed Sadoian that Modesto Refrigerating Company offered no gassing services and that Sadoian would have to choose his own gasser and make the arrangements regarding gassing.

Snowden testified that he received a telephone call from Modesto Refrigerating Company about October 29, 1952, requesting that he send a man to gas grapes in storage and that on the next day one of his men gassed the grapes.

Snowden also testified that he received no further instructions regarding gassing and did no further gassing until about November 17, 1952, when he sent one of his employees to Modesto Refrigerating Company's plant to ascertain what had happened with respect to the disposition of the grapes. His employee was informed that Snowden could return to gas the grapes three or four days thereafter, the postponement being caused by a movement of fruit, and that he would be informed when it would be possible to gas. The second gassing was made by him on November 21, 1952, as the result of instructions given to him by Modesto Refrigerating Company on or about that date.

Snowden further testified that on November 21, 1952, he notified Modesto Refrigerating Company that his revenue from the gassing was so small that he could not have his men running back and forth to Modesto Refrigerating Company's plant, and that from that time on any gassing would be done only as the result of a specific call from Modesto Refrigerating Company. He thereafter was notified by Modesto Refrigerating Company on three occasions to gas the grapes, and the gassings took place on December 9, 1952, December 20 or 22, 1952, and January 5, 1953. At the conclusion of the gassing, and on or about January 7, 1953, he rendered an invoice to Modesto Refrigerating Company for $48.75, for his labor and materials in performing all the gassings. Appellants paid a separate charge to Modesto Refrigerating Company of ½ cent per lug per gassing, or $318.92 for gassing in

the warehouse. Thus, Modesto Refrigerating Company retained $270.17 for "the advancement of the money for the gas and the general interruption of our normal routines at the plant and for the extensive damage to the equipment in the plant caused by the gas."

Plaintiffs made inspections of the grapes on November 15, 1952, and December 3, 1952. During the inspection on December 20, 1952, plaintiffs first ascertained that the grapes were showing signs of visible decay. Mr. Condrey was present during this inspection. George Sadoian testified that at that time "I didn't see anything over one-half of one per cent and that will grade U. S. No. One." Although George Sadoian stated that some of the grapes were breaking down at that time and that he was going to move them right away, he did nothing until his next inspection on January 7, 1953, at which time he observed that the conditions previously observed by him "had progressed considerably." Thereafter, Sadoian did not inspect the grapes and they were not gassed again, and the last car moved out of the warehouse on January 26, 1953.

The court instructed the jury that it could find either, both or none of the defendants liable. The jury found none to be liable. Motions for judgment notwithstanding the verdict, and for a new trial, and to vacate and set aside the verdict of the jury were denied by the trial court. Plaintiffs have appealed from the judgment and from the orders denying plaintiffs' motions for a new trial and for judgment notwithstanding the verdict.

■ It is apparent from a reading of the voluminous reporter's transcript, consisting of nearly 1,100 pages, that the evidence in the case is highly conflicting, and that it is sufficient to support the judgment. Appellants do not concede this and make a vigorous and forceful attack upon the sufficiency of the evidence. However, we are convinced that the judgment must be affirmed unless there were prejudicial errors of law in the admission of evidence or in instructions given to the jury.

Appellants' principal attack is on the verdict in favor of respondent Modesto Refrigerating Company (hereinafter referred to as Modesto Company). However, disregarding, as we must, all conflicts in the evidence, and drawing all inferences that may reasonably be drawn from the evidence in favor of respondent Modesto Company, we are satisfied that the evidence is sufficient to support the verdict in favor of said respondent.

There is evidence that Modesto Company does not and would not gas or provide gassing, and appellants were so advised. There is evidence that Modesto Company has never itself done any gassing, that it has no facilities for gassing, that it has no employees experienced in gassing; that gassing is a highly specialized and technical operation, and that Modesto Company told appellants that it did not perform and would not provide any gassing, and if appellants wanted any gassing done they must themselves choose their own gasser and make their own arrangements. There was evidence from which it might be reasonably inferred that appellants selected Snowden to gas the grapes and made the arrangements. Condrey testified that George Sadoian told him that Snowden was to do the gassing and that he (Sadoian) would inform Snowden. Also, Snowden had not done any gassing in Modesto Company's warehouse for many years, but Snowden had been doing business with appellants for many years and there were assurances from appellants that any business for gassing would be given to Snowden.

Modesto Company has never filed any schedule of rates for its warehousing services which included any specific charges covering the gassing of grapes. Under the regulations of the Public Utilities Act and the Food Warehousemen Act it is prohibited from receiving any different sum for such services than the rates shown in its schedules, or from making any charge for services not shown by the schedule, and it cannot lawfully discriminate, or show any preference between those offering food commodities for storage, and every contract in violation of these provisions is illegal and void. The essential differences between gassing operations and warehousing services, and the omission of any provision for gassing operations in the tariffs of Modesto Company furnish a basis for the inference that Modesto Company does not hold itself out as providing gassing operations as part of its warehousing services, and that it did not agree to so provide such gassing for appellants. Further, the fact that a separate special gassing charge was made, billed, accepted and paid, furnishes support for the inference that the parties recognized that the gassing was not included in warehousing services.

Appellants argue that it should be inferred that because Modesto Company is required to file schedules for its warehousing services and its schedules do not make any specific reference for gassing, Modesto Company agreed to provide gassing operations. However, the jury had a right to, and did, infer otherwise.

Modesto Company also points out that if no special gassing charge were made, persons storing grapes who have their grapes gassed while in storage would pay nothing to meet the additional costs and expenses resulting to the warehouseman because of the gassing and this might amount to unlawful discrimination.

Modesto Company asserts that since appellants had full knowledge of the frequency of the gassings prior to February 24, 1953, and since appellants on that date wrote a protest only to Snowden, and did not protest to Modesto Company until the employment of counsel, appellants recognized that Modesto Company was not responsible for the damage.

As to the verdict in favor of respondent Snowden, the evidence hereinbefore set forth is sufficient to support that verdict. There is, to be sure, some inconsistency and conflict between parts of the testimony introduced by respondent Modesto Company and respondent Snowden, but it was for the jury which heard the testimony to resolve the conflicts. The record presents a highly conflicting and somewhat confusing mass of testimony, but we are convinced that there is sufficient evidence to support the verdict in favor of both respondent Modesto Company and respondent Snowden.

Appellants contend also that the trial court should have withdrawn the issue of contributory negligence from the jury. They assert that there was no evidence whatever that appellants were contributorily negligent, and hence the question became one of law.

Appellants based their contention upon the circumstance that George Sadoian first observed that there was some decay at the time he made his inspection on December 20, 1952, and upon their assertion that before that date there is no evidence whatever that plaintiffs were contributorily negligent, and that after that date there could not have been any contributory negligence on their part because the damage had then already been done and hence any negligence on their part after that date could not have contributed to the injury complained of.

In reply, respondent Modesto Company points out, however, that on December 20, 1952, according to George Sadoian's own testimony, the grapes all graded the same as when they were stored, namely, United States Number One. Modesto Company argues that although some damage to some grapes was first visibly observed on December 20th, it was something that had started before that date, and it was something that continued to advance and spread after that date. Therefore, the question of appellants' contributory negligence as relates

to their acts or omissions before December 20th need not be considered apart from their acts or omissions after the date. Any contributory negligence during both those periods would be sufficient. Respondents argue that there is substantial evidence to support a theory of contributory negligence both before and after December 20, 1952.

The record shows that George Sadoian testified that ever since 1920 he had been actively engaged in the growing of grapes and was thoroughly experienced in storing and marketing such grapes. He was a college graduate with a degree in chemistry. He was fully familiar with the necessity for gassing grapes in storage at regular intervals and knew that in the absence of such gassing there was grave danger that they might deteriorate. There is substantial evidence from which the jury could have found that during the 66-day period from the time the first car of grapes left for Modesto Company to the time when Sadoian first observed that some of the grapes were beginning to break down, Sadoian failed and neglected to make proper arrangements for gassing, that although he knew that the first gassing had not taken place for 14 days he failed and neglected to take appropriate action to prevent a repetition of the delayed first gassing and allowed 22 days to intervene before a second gassing was made, that he neglected to make sufficient inquiries regarding the gassings, that he failed to make proper inspections, that he failed to give fitting instructions regarding the gassings, and he failed to consult with the gassing company regarding the care that should be given the grapes.

After his inspection on December 20th, George Sadoian stated to Mr. Condrey that some of the grapes were breaking down and he was going to move them right away. However, he did not say anything about gassing—he did not ask Condrey any questions about gassing, and he made no complaint about the care the grapes had received up to that time, and he gave no instructions with respect to the care he wanted these grapes to receive from then on. Sadoian did not make another inspection until January 7, 1953, at which time conditions had progressed considerably. Some time between his inspections on December 20th and January 7th he had a conversation about the gassing with Snowden's representative, at which time he knew that his grapes were breaking down and that Snowden had done the gassing, and he then knew the gassing interval. He did not complain that the grapes had not been gassed sufficiently. After his inspection on January

7th Sadoian never again inspected the grapes; they never again were gassed, and the last car was not moved out until January 26th. At no time did he ever discuss with Snowden the care that was to be given these grapes.

We are convinced that there is sufficient evidence in the record to support the defense of contributory negligence and that the court did not err in instructing the jury upon that issue. Appellants apparently recognized this at the trial as one of the principal instructions on contributory negligence was plaintiffs' (appellants') instruction Number 48 which was given by the court. Appellants are therefore not in a position to complain because the issue of contributory negligence was submitted to the jury.

Appellants launch a vigorous attack upon the instructions, contending that some were improperly given, some improperly refused, and some improperly modified. The trial of the instant case extended over several weeks and the two principal defendants were represented by separate counsel. Appellants offered 49 instructions and respondents offered 48 instructions. We have carefully examined all of the instructions given by the court and believe that the jury was fully and correctly instructed on all of the issues presented at the trial. It would serve no useful purpose to discuss in detail all of appellants' contentions as to the instructions.

Appellants contend that the court erred in modifying their proposed instruction Number 49 by striking out certain language dealing with the doctrine of sudden peril or sudden emergency. The instruction as submitted referred to the evidence that Sadoian had observed some damage to some of the grapes when he made his inspection on December 20th, and in effect it instructed the jury that it might consider that evidence to disclose a situation where plaintiffs were suddenly and unexpectedly confronted with peril and a dangerous condition which would excuse them from then acting in a reasonable manner or using reasonable judgment.

We are unable to agree with appellants that the doctrine of imminent peril or sudden emergency is applicable to the instant case. That doctrine is properly applied only in cases where an unexpected physical danger is so suddenly presented as to deprive the injured party of his power of using reasonable judgment. *Groat* v. *Walkup Drayage & Warehouse Co.*, 14 Cal.App.2d 350 [58 P.2d 200], states the rule: "In absence of any evidence disclosing a situation of sudden peril, the doctrine is not applicable and the giving

of an instruction stating the doctrine would be erroneous. [Citations.]'' And even if the giving of such an instruction in the instant case were proper, we do not believe that the failure to give it would constitute prejudicial error, for the jury was fully and correctly instructed on all phases of the case.

Throughout the lengthy trial the evidence was directed to the issue of whether respondents Modesto Company and Snowden agreed to or were obligated to see that the grapes were properly gassed or whether appellants failed to make the proper arrangements for the gassing of the grapes. The jury undoubtedly concluded that appellants were at fault in not making proper and definite arrangements for the gassing of the grapes and that neither respondent Modesto Company nor respondent Snowden were guilty of any negligence which caused damage to the grapes. The evidence was highly conflicting but was sufficient to support the verdict of the jury, and no prejudicial error was committed.

No other points raised require discussion.

The appeal from the order denying motion for a new trial is dismissed, said order being nonappealable. The judgment and the order denying plaintiffs' motion for judgment notwithstanding the verdict are affirmed.

Van Dyke, P. J., and Warne, J. pro tem.,* concurred.

A petition for a rehearing was denied February 28, 1958, and appellants' petition for a hearing by the Supreme Court was denied March 26, 1958.

---

*Assigned by Chairman of Judicial Council.