605 P.2d 947

Kenneth G. MANN and Lillian Mann, husband and wife, Plaintiffs-Appellants,

v.

Javier Francisco GONZALES, Individually, and C. M. Gulbranson, Individually, Defendants-Respondents.

No. 12985.

Supreme Court of Idaho.

Jan. 17, 1980.

Rehearing Denied Feb. 29, 1980.

Lloyd J. Webb of Webb, Burton, Carlson, Pedersen & Paine, Twin Falls, for plaintiffs-appellants.

Richard C. Mellon, Jr., of Elam, Burke, Jeppesen, Evans & Boyd, Boise, for defendants-respondents.

SHEPARD, Justice.

This is an appeal from a judgment entered upon a jury verdict in favor of the

defendants in an action for personal injuries and property damage allegedly suffered by plaintiffs as a result of an automobile accident.

The accident occurred on a city street in Twin Falls and it was generally agreed that the roads were "slick." The street is 33 feet wide at the scene of the accident.

According to the testimony of defendant Gonzales, he was driving down the street at approximately 20 to 25 miles per hour when he noticed the Mann car some distance ahead traveling in the same direction. The posted speed limit in that area was 25 miles per hour. Gonzales testified he had no difficulty handling his car prior to the accident, and that he paid no particular attention to the Mann car until he was some six or seven lengths away, at which point Gonzales slowed his vehicle. As Gonzales approached the Mann car from the rear, the Mann car, in attempting to negotiate a right turn at an intersection, struck the east curb and bounced back out into the lane of traffic and stopped. Gonzales applied his brakes and attempted to steer to the left of the Mann vehicle, but his efforts to do so were hampered by the presence of an oncoming vehicle. He was unable to avoid the Mann vehicle and struck its left rear. An officer investigated the accident and estimated that at the time of the collision the right rear of plaintiff's automobile was three feet or more from the east curb. He further testified that the front of the Mann vehicle was some two to two and a half feet from the curb at the time of the accident. Thus, it was the officer's opinion that the left rear of the Mann vehicle was protruding into the main traveled portion of the roadway.

Mann, on the other hand, testified that she was driving at approximately "five miles per hour," and that as she approached the intersection where she desired to turn right, she drove her car into the parking lane bordering the city street, and that her car slid and the right front tire hit the curb. She testified that she did not bounce away from the curb, that her right front tire was touching the curb after the car stopped, and

that the rear of her car was approximately one and one-half feet away from the curb. That testimony is obviously in direct conflict with other versions of the accident.

Following the trial of the action, the matter was submitted to the jury on a special verdict form, to which neither party objected. In answer to the question, "Was the defendant Javier Francisco Gonzales negligent and if so was his negligence a proximate cause of the accident and resultant injuries and damages," ten of the jurors answered "No," and two answered "Yes." In answer to the second question on the special verdict form, "Was the plaintiff Lillian Mann negligent, and if so was her negligence a proximate cause of the accident and resultant injuries and damages" all twelve jurors responded "Yes." Judgment was entered upon the verdict in favor of the defendant and defendant was awarded his costs, including attorney's fees.

Appellants contend that the facts in this matter require a determination of at least some degree of negligence on the part of defendant Gonzales. The form of the questions posed in the special verdict form (and not objected to by plaintiffs) preclude the isolation of the issue of defendant's negligence from the issue of proximate cause. Because of the form of the questions, the jury's verdict is susceptible to two interpretations: (1) there was no negligence on the part of defendant Gonzales, or (2) Gonzales was negligent but his negligence was not a proximate cause of the accident. See Stoddard v. Nelson, 99 Idaho 293, 581 P.2d 339 (1978). Questions of negligence and proximate cause are to be resolved by the trier of the fact, and the resolution of those questions will not be set aside on appeal if it is supported by substantial and competent evidence. E.g., Stoddard v. Nelson, supra; Berg v. Mengore, 271 Or. 530, 533 P.2d 801 (1975). See also, Eckman v. Jones, 85 Idaho 10, 375 P.2d 180 (1962); Barry v. Arrow Transp. Co., 80 Idaho 447, 333 P.2d 1008 (1958). There is evidence which will support a finding of a lack of causal relationship between the alleged negligence of Gon-

zales and the accident, and, hence, even if Mann is correct in her assertion, the verdict of the jury will not be disturbed.

■ Appellant also assigns error in the failure of the trial court to give her proposed instruction no. 19, dealing with the obligation of a driver under the then existing conditions and circumstances to drive in such a manner as to be able to stop to avoid collision with a vehicle ahead. The substance of that proposed instruction was adequately covered elsewhere and, hence, the trial court did not err in refusing to give appellant's proposed instruction. *E.g., Meissner v. Smith*, 94 Idaho 563, 494 P.2d 567 (1972).

■ Appellant next assigns error to instruction no. 15 by the trial court drawn from *Bale v. Perryman*, 85 Idaho 435, 380 P.2d 501 (1963). That instruction provided:

"You are instructed that certain circumstances furnish an excuse or justification for the negligence presumed to arise on proof of violation of a statute or ordinance. Such circumstances may generally be classified in four categories: (1) Anything that would make compliance with the statute impossible; (2) Anything over which the driver has no control which places his car in a position violative of the statute; (3) An emergency not of the driver's own making by reason of which he fails to obey the statute; (4) An excuse specifically provided by statute."

Appellants argue that the giving of said instruction was prejudicial and reversible error because the facts presented at trial did not properly present the issue of excuse or justification for violation of a statute. Plaintiffs rely primarily on *Werth v. Tromberg*, 90 Idaho 204, 409 P.2d 421 (1965). We disagree, and deem that plaintiffs' reliance on *Werth* is misplaced. The holding in *Werth* was based on the rationale that "[t]here were no facts presented which justified instructing the jury on the exemption from compliance with the statute." Here, however, the evidence presented at trial raised the issue of the presence of a "sudden emergency" and *Werth* is, therefore, inapplicable.

■ After appellant Mann signaled her intention to turn right at the intersection and pulled off the traveled lane portion of the street into the parking lane, Gonzales was not under the necessity of anticipating that Mann would so negligently operate her car that she would strike the curb and rebound therefrom into the traveled lane of traffic, thus presenting a "sudden emergency." Even assuming that Gonzales was negligent in following the Mann vehicle too closely, clearly if the jury believed the testimony of Gonzales and the investigating officer, and disbelieved the testimony of Mann, the jury could have excused this negligence because of the existence of the "sudden emergency" confronting Gonzales.

The propriety of giving an instruction such as instruction no. 15 is assessed by determining whether the issue was raised either in the pleadings or by sufficient factual basis in evidence introduced at trial. Annot., 80 A.L.R.2d 5 (1961). Here, the evidence adduced at trial raised issues as to Gonzales' negligence both before and after the arising of the emergency and, therefore, instruction no. 15, relating to excuse and justification, was properly given. *Weaver v. Sibbett*, 87 Idaho 387, 393 P.2d 601 (1964). Once an issue is presented at trial and supported by evidence, it is the duty of the trial court to instruct the jury on that issue. *E.g., Rosenberg v. Toetly*, 94 Idaho 413, 489 P.2d 446 (1971).

Finally, appellants assign as error the awarding of attorney's fees to defendants. This assignment is unsupported by either authority or argument, and, therefore, will not be reviewed. *E.g., Voyles v. City of Nampa*, 97 Idaho 597, 548 P.2d 1217 (1976).

The judgment is affirmed.

DONALDSON, C. J., and DUNLAP, J. Pro Tem., concur.

BAKES, Justice, concurring specially:

I think the problem in this case stems from the different view of the facts which is apparent from reading the majority and dissenting opinions. Also there is a failure

to adequately distinguish between the "sudden emergency" instruction, of which *Dewey v. Keller*, 86 Idaho 506, 388 P.2d 988 (1964), is typical, and the instruction given in this case, which is more appropriately called a "justification" or "excuse" instruction. As the majority opinion points out, one view of the evidence supports the conclusion that Mrs. Mann "drove her car into the parking lane bordering the city street," *ante* at 948, and that in the process her right front tire hit the curb which caused the left rear of her automobile to bounce back into the traveled portion of the roadway. However, the dissenting opinion seems to assume that the Mann vehicle was in the traveled lane of traffic until it "slid into the curb on attempting to turn at the intersection." *Post* at 953. Thus the dissenting opinion finds this case "on all fours with" *Hackworth v. Davis*, 87 Idaho 98, 390 P.2d 422 (1964). However, it must be apparent that if the plaintiff Mann did in fact "[drive] her car into the parking lane bordering the city street" and then commenced a right turn which resulted in her sliding into the curb which caused the rear of her car to bounce back approximately 3½ feet, thus projecting into the traveled lane of the street, we have a case which is substantially different on the facts from *Dewey v. Keller, supra.*

The instructions at issue in *Dewey v. Keller*, 86 Idaho 506, 388 P.2d 988 (1964), and *Hackworth v. Davis*, 87 Idaho 98, 390 P.2d 422 (1964), were not the same as the instruction at issue here. The text of the instruction from *Dewey* is set forth in the dissent. *Post* at 952, fn. 1. This is the standard sudden emergency instruction; it does not refer to or deal with the situation where negligence is presumed to arise upon proof of violation of a statute or ordinance. As we noted in *Hackworth*, courts have been extremely critical of the sudden emergency instruction. That instruction is really just a reiteration of the general definitional instructions regarding negligence. As such it is repetitive, places undue emphasis on the theory of the defense, constitutes a comment on the evidence, and is more appropriately a matter for counsel's

argument. *Hackworth v. Davis, supra* at 107–8, 390 P.2d 422. It is for these reasons that the Idaho Pattern Jury Instruction Committee recommended that no instruction regarding sudden emergency be given. IDJI 215 (1974).

Significantly, however, the committee did recommend the use, where appropriate, of the instruction given in the instant case. IDJI 211 (1974). *See ante* at 949. The purpose of this instruction is to inform the jury that it may excuse the violation of a statute which would otherwise amount to negligence *per se*. It is not a mere reiteration of general principles of negligence, and thus is not subject to the same criticism as the typical sudden emergency instruction.

The justification instruction given in this case listed four possible situations which would excuse a statutory violation amounting to negligence *per se*. Three of these "excuses" are arguably not relevant to this case and should probably not have been included. The fourth "excuse" refers to an emergency not of the party's own making, and it was not error to give this instruction.

First, the evidence adduced at trial raised the issue of whether an emergency was presented by the sudden and unexpected presence of Mann's car in Gonzales' lane. Second, the evidence sustained the theory that this emergency was caused solely by Mann's inability to control her car after striking the curb. In any event, the instruction specified that the emergency must not have been of Gonzales' own making, and therefore the jury was properly entitled to resolve this question if there was any uncertainty as to the source of the emergency. Third, it is clear that Gonzales' conduct after the emergency arose was an issue. In my opinion, it was the absence of this third factor which caused the Court in *Hackworth* and *Dewey* to disapprove of giving the emergency instruction. As the dissent points out, an emergency cannot serve as a justification or excuse to otherwise negligent conduct unless the allegedly negligent conduct occurred after the emergency had arisen. Even though *Hackworth* and *Dewey* dealt with a standard emergen-

cy instruction as opposed to the justification or excuse instruction given here, I believe that the requirement that the driver's post-emergency conduct be at issue is similarly applicable here.

In this case, Mann contends that Gonzales failed to control his automobile in such a way as to avoid collision with Mann's automobile in violation of I.C. § 49–701(a). Mann also received an instruction to the effect that violation of this statute amounted to negligence *per se*. Since one view of the evidence—that set out in the majority opinion—suggests that Gonzales' alleged inability to control his car occurred after he was presented with the problem of avoiding the obstacle presented by Mann's vehicle bouncing back into his traveled lane of traffic, he was therefore entitled to an instruction informing the jury that they might excuse his inability to stop his car on the basis of the emergency caused when Mann's vehicle suddenly rebounded into his lane of traffic.

This is a case where the plaintiff was armed with a powerful instruction regarding the presumption of negligence arising from statutory violations, and the defense was given an instruction justifying an exception to that presumption. The theories of both parties find ample support in the evidence in the record. It was not error to give the instruction in question.

BISTLINE, Justice, dissenting.

This case is controlled by two prior decisions handed down by this Court just a month apart over fifteen years ago. Any misunderstanding as to the application of the sudden emergency rule was put to rest by the unanimous opinions in *Dewey v. Keller*, 86 Idaho 506, 388 P.2d 988 (1964), and *Hackworth v. Davis*, 87 Idaho 98, 390 P.2d 422 (1964), both authored by Justice McFadden. *Bale v. Perryman*, 85 Idaho 435, 380 P.2d 501 (1963) on the other hand, was *not* a sudden emergency case. The membership of the Court was the same in all three cases; significantly, *Bale v. Perryman*, the earliest of the three, was not even mentioned in *Dewey v. Keller* or *Hack-*

*worth v. Davis.* Nor should it have been, for the simple reason that *sudden* emergency was not involved in *Bale v. Perryman*. In *Bale v. Perryman* there was not even any question of emergency, sudden or otherwise. In that case contributory negligence was still in effect, and was the salient issue on the appeal, where the plaintiff admitted passing at an intersection in outright violation of the statute prohibiting such conduct. The Court held, and *this* is the holding of that case, that violation of a positive statutory prohibition "is negligence per se and not merely prima facie evidence of negligence. (citing cases.)" *Id.* at 440, 380 P.2d at 503.

From there on the Court in that opinion discussed Bale's conduct and found the record:

"conclusive that the act of respondent [Bale] in undertaking to pass within the prohibited area constituted negligence per se; that such act was not unavoidable or occasioned by circumstances beyond his control; neither was it justifiable nor excusable."

*Id.* at 443, 380 P.2d at 505. Paragraphs earlier the Court stated:

"Respondent frankly admits that he was undertaking to pass the vehicle ahead of him within the 100 foot area specifically prohibited by the statute. There is no other reasonable interpretation of the evidence than to conclude that the voluntary act of respondent, which was a violation of law, resulted in his damage and proximately caused or contributed thereto."

*Id.* at 442, 380 P.2d at 505.

In discussing Bale's conduct, and only in that regard, the Court stated "that certain circumstances furnish an excuse or justification for the negligence presumed to arise on proof of violation of a statute or ordinance." *Id.* at 443, 380 P.2d at 505. Borrowing language from the Iowa case of *Florke v. Peterson*, 245 Iowa 1031, 65 N.W.2d 372 (1954), the Court categorized four possible circumstances which might have furnished an excuse or justification for the negligence presumed to arise on

proof of violation of a statute or ordinance [1] —one of which was "[a]n emergency not of the driver's own making by reason of which he fails to obey the statute." *Bale*, 85 Idaho at 443, 380 P.2d at 505. Bale, however, did not claim to have acted in any emergency in voluntarily passing at the intersection, and there was no issue of emergency in the case, let alone any issue of sudden emergency. None of the four possible excuses was found to have application. Bale passed in a zone prohibited by statute, and in that sense his conduct was just like that of Gonzales in the instant case—a driver who followed too closely in violation of a statute.

As the Court stated in *Bale*, and applicable here:

> "Clearly the statute here involved (I.C. § 49–713) is a safety statute enacted for the protection of all persons using our roads and highways."

*Id.* at 442, 380 P.2d at 505.

That Gonzales voluntarily followed too closely behind the Mann vehicle, or traveled at an excessive speed under the circumstances, or both, is readily apparent from his own testimony:

> "Q. From your testimony, when you first saw her stop or hit the curb or whatever you testified to, how far back were you did you say, how many car lengths?
>
> "A. I said probably two, somewhere in that area.
>
> "Q. And why was it after you observed Mrs. Mann stopping her vehicle that you were unable to either stop yourself or get around the vehicle without hitting the Mann vehicle?
>
> "A. The roads were slick.
>
> .    .    .    .    .
>
> "Q. . . . So I take it that generally you were simply too close to stop when you saw the Mann vehicle stopping; is that a fair statement?

> "A. To stop right directly behind her, yes.
>
> .    .    .    .    .
>
> "Q. (By Mr. Plankey) Your car hit the rear of the car Mrs. Mann was driving, correct?
>
> "A. Yes, her left rear.
>
> "Q. And you were unable to stop after you saw her stop, right?
>
> "A. I wasn't really trying to stop.
>
> .    .    .    .    .
>
> "Q. (By Mr. Plankey) Well, what were you trying to do?
>
> "A. Well, it happened so fast that the first thing I did was hit the brakes. And it was very icy. I didn't have full control of the car. I saw there was a little bit of room around from where she was protruding, so I was shooting for that.
>
> "Q. And you were going 20 miles an hour?
>
> "A. Probably less than that by then.
>
> "Q. Well, what made you reduce your speed?
>
> "A. I saw her car.
>
> "Q. But in any event you simply—after you saw her car stopped, you couldn't get yourself stopped in time, right?
>
> "A. That's more or less true, yes.
>
> .    .    .    .    .
>
> "Q. Were you sleepy that morning?
>
> "A. I was tired. I was used to it. I wasn't really sleepy.
>
> "MR. PLANKEY: Your Honor, for purposes of examination from the deposition, I would like to have it published and give a copy to Mr. Gonzalez at this point.
>
> "THE COURT: Mr. Gonzalez, here is the court's copy of your deposition. If you will take that, Mr. Plankey will refer you to pages and lines, will read you the questions which were asked at that time and the answer which you then gave. And then he will then inquire if you did give that answer; and then he may examine you further if there is any inconsistency.

1. As will be hereinafter discussed, the Court's statement in *Bale* was slightly inaccurate. The excuses or justifications so categorized by the Iowa court were "legal" excuses, as is also discussed *infra*.

"Q. (By Mr. Plankey) Turning to Page 34, Mr. Gonazlez, Line 10, were you asked this question and did you give this answer: 'With respect to what you have labeled as Maple Avenue, when you first saw her car, was it at the Maple Street intersection? Is that what you're saying.'

"Answer: 'I'd say that's about correct. You know, I wasn't very observant that morning. I was still a little sleepy.'

"Q. Did you in fact answer that way the day that that deposition was taken?

"A. That's the way I answered it, yes.

. . . . . . .

"A. . . . But there were more cars on the side of the road and snow and the kids."

Such testimony, under the holding of *Bale* might be said to require that Gonzales be held negligent as a matter of law. However, *Bale* was decided at a time when any negligence on the part of a plaintiff precluded recovery. Here we are concerned with the negligence of a defendant where the law of comparative negligence is applicable. Accordingly, the cause should be retried for error below in giving the instruction requested by defendant, which advised the jury that they could excuse Gonzales' negligence because of the sudden emergency which confronted him when the Mann vehicle slid into the curb on attempting to turn at the intersection.

The sudden emergency cases of *Dewey v. Keller* and *Hackworth v. Davis* are applicable, although given little mention in the Court's opinion. In *Dewey v. Keller,* the doctrine was held to have no application:

"For such doctrine to be applicable it is essential that the facts shall show a sudden emergency did exist. *Barry v. Arrow Transportation Company,* supra [80 Idaho 447, 333 P.2d 1008]; *Stuart v. McVey,*

supra [59 Idaho 740, 87 P.2d 446]; 8 Am. Jur.2d, Automobile and Highway Traffic, § 1030; *Sadoian v. Modesto Ref. Co.,* 157 Cal.App.2d 266, 320 P.2d 583 (1958); *Lubliner v. Ruge,* 21 Wash.2d 881, 153 P.2d 694 (1944). *Here no person charged with negligence or contributory negligence acted within the sudden emergency doctrine.*" (Emphasis added)

86 Idaho at 514, 388 P.2d at 992.

The instruction given in that case, though held not applicable, was a proper instruction of the doctrine.[2] Of the doctrine this Court, citing earlier Idaho cases, said:

"This Court has recognized that this doctrine is applicable when one who, without fault on his part, is suddenly and unexpectedly placed in a perilous situation, so as to be compelled to act instantly and without an opportunity to exercise deliberate judgment. Under such circumstances he is not chargeable with negligence if in attempting to escape from the peril or to avoid or minimize the threatened injury he acts as a person of reasonable prudence would or might have acted in the same or similar situation."

*Id.* at 513, 388 P.2d at 992. *Dewey v. Keller* arose out of a house being stalled at night time on a public highway. A deputy sheriff was on the scene and in charge some ten minutes before Dewey drove into the house and was killed. Ice-covered roads were not involved.

Just a month later the same Court handed down its opinion in *Hackworth v. Davis,* 87 Idaho 98, 390 P.2d 422 (1964), a case which is on all fours with this. Davis, who was alleged to have followed too closely and at too great a speed for circumstances then existing gave testimony in that case similar to the testimony of Gonzales in this case:

---

2. The instruction, in the text of the opinion reads:

"'I instruct you that the law recognizes that men are often confronted by and must act in emergencies. When a man is suddenly confronted by an emergency not due to negligence on his own part, if he acts as a reasonably prudent person under the circumstances would act, he cannot be charged with negli-gence because in such emergency he may not have done that which now can be seen may have prevented an accident. It is not a question of what was the safest or best thing to do. The question is what, under the circumstances, would a reasonably cautious and prudent person have done.'"

86 Idaho at 513, 388 P.2d at 992.

" 'Q. Now, let's establish one more distance. After Mr. Cussen passed you, did you speed up or did you slow down?

" 'A. I slowed down.

" 'Q. To what speed?

" 'A. I just let up on the gas. Then after following a ways I presume my speed picked up a little.

" 'Q. Then you were going about the same speed, about 30 miles an hour?

" 'A. Yes.

" 'Q. How far then did you stay behind the Cussen car up to the point of the accident?

" 'A. Four or five cars.

" 'Q. How far would that be?

" 'A. The average car is 16 feet.

" 'Q. And it was four car lengths?

" 'A. Four or five.

" 'Q. Could it have been three?

" 'A. No, I thought it sufficient enough distance for ordinary conditions.

" 'Q. This was not an ordinary condition?

" 'A. No, sir.

" 'Q. It was pretty slippery and you were four car lengths behind?

" 'A. Yes.' "

*Id.* at 102–103, 390 P.2d at 424.[3] Davis requested and the trial court gave an instruction on the sudden emergency doctrine. In reversing for a new trial, this Court held that the instruction was improperly given. In that case, as in this, the plaintiff vehicle was rear-ended by a following vehicle. In that case, the plaintiff vehicle came to an abrupt stop on the highway, without any warning, when another oncoming passenger car slid across the icy highway and hit the plaintiff vehicle head-on; in this case the abrupt stop of the plaintiff vehicle was caused by its slipping on the ice and hitting the street curbing, *with advance warning* to the following vehicle that the plaintiff vehicle was slowing and was turning toward the intersection on its right. In both cases the roadway was exceptionally slick. In *Hackworth v. Davis,* on the open highway *out of town,* the defendant Davis followed at a speed of about 30 miles per hour, on a bridge without intersections; in this case the city speed of Gonzales was between 30 to 20, "probably" slowing down. The following vehicle in *Hackworth v. Davis* was back four to five car lengths when the plaintiff vehicle abruptly stopped; Gonzales admits to being back only two car lengths. In both cases, the icy roads made it impossible for the following vehicle to avoid running into the abruptly stopped vehicle.

In both cases the negligent conduct charged against the respective driver following was following too closely and traveling at a speed which was excessive under conditions then existing—both charging violations of safety statutes. Conversely, in neither case was there any claim of negligence on the part of Davis, or on the part of Gonzales, for what each did or did not do after the sudden emergency which in each case was the abrupt halt of the vehicle being closely followed.

What was said in *Hackworth* applies here, and requires that a new trial be had free of the error of the giving of such an instruction:

"Q. Couldn't you have dropped further behind from the Cussen car?

"A. I could have, yes.

"Q. And that would be: you could have dropped further back from the time that you were being passed on this sharp corner, clear up to the point of impact which would be seven or eight-tenths of a mile, isn't that true?

"A. Yes.

"MR. COGSWELL: That is all we have, Your Honor."

---

3. In addition to the testimony of Davis quoted in the opinion, Davis also testified:

"Q. You really didn't have very much time to apply your brakes, Mr. Davis?

"A. Not very much, no.

"Q. Mr. Davis, in answer to a question asked you on direct by Mr. Brown, you stated that you could have done nothing to prevent this collision. Isn't it a fact you could have dropped further behind the Cussen car and had more room to stop and prevent this accident?

"A. Well, I have been driving I believe almost 20 years.

"For a party to be entitled to have an instruction given on the theory of 'sudden emergency' in rebuttal of a claim of negligence (or contributory negligence, as the case may be), the record must contain facts from which it could be found that the sudden emergency relied upon was not of his own making. *Stuart v. McVey*, 59 Idaho 740, 87 P.2d 446; *Barry v. Arrow Transportation Company*, 80 Idaho 447, 333 P.2d 1008. In the instant action, *respondent Davis is charged* by appellant *with following the Cussen car too closely, or in travelling at excessive speed under the circumstances. Appellant does not contend that Davis was negligent in the control of his truck after the Stanfield vehicle struck the Cussen car, and Davis' conduct after the emergency, is not an issue here.* The only issue to be resolved by the jury was whether Davis was negligent in the operation of his truck prior to the time of the Stanfield-Cussen collision, and his conduct after that collision not being claimed to have been negligent, the 'sudden emergency' doctrine was not applicable and no instruction embracing it should have been given." (Emphasis added)

*Hackworth*, 87 Idaho at 108, 390 P.2d at 428.

*ADDENDUM* :

Since the foregoing was written a special concurring opinion has been filed because of the failure of the Court's opinion and the dissent "to adequately distinguish between the 'sudden emergency' instruction, of which *Dewey v. Keller*, 86 Idaho 506, 388 P.2d 988 (1964), is typical, and the instruction given in this case, which is more appropriately called a 'justification' or 'excuse' instruction."

The special concurrence suggests that it was proper here to give the *Bale* instruction because *one* part of it has supposed application: "(3) An emergency not of the driver's own making by reason of which he fails to obey the statute." This statement of the law is but little different from the sudden emergency instruction. The latter was couched in terms of a person being "sudden-ly confronted by an emergency not due to negligence on his own part," whereas *Bale*, part (3), speaks of a driver's being faced with "an emergency not of the [driver's] own making." Both principles of law have the same purpose—to absolve a driver from his negligence where he has been confronted with a sudden emergency—one which did not arise from that which he himself did. A driver will be so absolved only if his own negligence did not contribute to the creation of the emergency.

The statement in *Bale* quite obviously is premised on emergency situations over which the driver had no control, and caused the driver to violate a statute or ordinance.

The special concurrence also suggests that "Gonzales' conduct after the emergency arose was an issue." On this premise it is then claimed this case is distinguishable from *Hackworth* and *Dewey*. I disagree, and thought that the testimony of Gonzales conclusively proved otherwise. In that view I am sustained by the similar view set forth in the Gonzales brief:

"The evidence establishes, however, that Gonzales was fully in control of the automobile he was driving until he was confronted with the emergency created by the plaintiff's losing control of her automobile and striking the curb. Thereafter, he attempted to slow his vehicle and steer to the left of the plaintiff's automobile, but was prevented from doing so because of road conditions, the presence of oncoming traffic, the abrupt stop of the plaintiff's vehicle, and the protruding of at least that vehicle's left rear fender into his lane of travel."

Obviously Gonzales, from the position he had put himself in, could do nothing once Mrs. Mann's vehicle went into a skid.

As to Mrs. Mann's vehicle going out of control, it is difficult to accept the proposition that this was, or should have been, unexpected. Mrs. Mann was driving extremely slow and signaled her intention to turn right far ahead of the Morningside-Eleventh Avenue East intersection. All traffic was driving on an inch of ice covered

by an inch of snow. Under those conditions a driver has to anticipate the unexpected which, it may be surmised, is the very reason for the statutory prohibition against following too closely, and requires speed to be controlled in accordance with existing conditions of the road. Other than that Gonzales followed the Mann vehicle so closely that he couldn't stop or turn when her car skidded and hit the curb, there would have been no so-called emergency. To adopt the other point of view is to say that drivers tailgating other vehicles down the highway will always be absolved of liability for rear-ending the vehicle ahead so long as it was no doing of theirs that the preceding vehicle came to an abrupt stop. The other point of view quite apparently is satisfied with the Gonzales argument "that Gonzales was fully in control of the automobile he was driving until he was confronted with the emergency created by the plaintiff's losing control of her car and striking the curb." If that is sound, then *Hackworth* was decided wrongly, because Davis, too, had complete control of his vehicle, in fact, greater control because of the added traction attributable to a heavy logging truck. Control, however, means more than being not out of control—it means and the statutes mandate that a following vehicle must stay far enough back and proceed at such a speed so as to avoid becoming involved with the preceding vehicle if it is brought to a stop, which on city streets is often occasioned by children darting into the street, children wandering on bicycles, and dogs chasing dogs. As I understand the other point of view, following too closely is a wrong only when your vehicle overtakes and slams into the rear of the preceding vehicle which is still moving down the street.

The special concurrence does bring out one point which I had also considered as worthy of mention in my earlier effort. On page 950 it is stated that of the four *Bale* excuses or justifications, "Three of these 'excuses' are arguably not relevant to this case and should probably not have been included." If the word "probably" is stricken, as it should be, I agree.

In concluding what I first wrote, I quoted the Court's statement at page 108, 390 P.2d at 428 in *Hackworth* for the proposition that the sudden emergency instruction should not have been given here. The balance of that statement, and applicable as well to the other three "excuses" reads:

> "The giving of such an instruction improperly interjected the issue of whether there was or was not an emergency, and would tend to divert the attention of the jurors from the resolution of main issues of negligence and proximate cause."

*Hackworth*, at 108–09, 390 P.2d at 428. Here, then, interjected improperly for the jury's consideration, in addition to the emergency issue and totally for juror speculation, were the issues of whether there was:

> "(1) Anything that would make compliance with the statute impossible; (2) Anything over which the driver has no control which places his car in a position violative of the statute; . . . (4) An excuse specifically provided by statute."

So in *Werth v. Tromberg*, 90 Idaho 204, 409 P.2d 421 (1965), where the *Bale* statement of law was given as an instruction, to a challenge on appeal that the giving of it was prejudicial error, the Court there wrote:

> "With this contention we agree. There were no facts presented which justified instructing the jury on the exemption from compliance with the statute. . .

> "However, there were facts, namely, the presence of the trees along the driveway, which the jury erroneously could have considered in light of this instruction, upon which they could render a verdict for the respondent. Thus, by reason of this instruction, the jury could have found that although Tromberg entered the highway in violation of Werth's right-of-way, nevertheless, they could have found his action was excusable because of his difficulty seeing the roadway through the trees. The presence of the trees is not such a cause or thing which makes

'compliance with the statute impossible,' or 'something over which the driver had no control which placed his car in a position violative of the statute,' or 'an emergency not of the driver's own making by reason of which he fails to obey the statute.' Yet on the basis of this instruction, the jury could have been misled into believing that the trees excused or justified Tromberg's entering the highway, if indeed he did. . . .

"Because Instruction No. 23 might have misled the jury into believing that Tromberg's negligence was excusable, such instruction was prejudicial to the appellant and constitutes reversible error." (Citations omitted)

*Id.* at 211–12, 409 P.2d at 425. Mann's brief very aptly applies that case to this:

"The jury instruction is of the type that would tend to divert the attention of the jurors from the main issues involved in this case which were basically that the defendant was following the plaintiffs' car too closely and was traveling at excessive speed under the circumstances and because of this negligence he ran into the rear end of plaintiffs' automobile. The defendant's negligent actions were of the type of continuing negligence, beginning at a point of time well before the accident which did occur in the instant case. These actions were independent of any emergency, and in fact because of these prior negligent actions on the part of the defendant, the accident did occur. This accident was clearly not a sudden emergency, not of the defendant's own making, the defendant testified that he saw the plaintiffs' signal light, defendant stated he was too close to plaintiffs' car to stop and that he was too close to plaintiffs' car to move into the southbound lane of traffic."

Our attention has also been brought to *Haakonstad v. Hoff*, 94 Idaho 300, 486 P.2d 1013 (1971), where the Court made an extensive review of the "four excuses" earlier recognized in *Bale*. After observing that the statement had been picked up from the Iowa court, the Court noted that Iowa in turn obtained it from Ohio, and with painstaking care aimed at avoiding the type of mixup we clearly have here, said of the Iowa decision:

"There the distinction is drawn, and properly so, between the common law rule of reasonable care or care which a reasonably prudent man would exercise under like circumstances, and the rule in the instance of a statutory violation:

" 'The Ohio Supreme Court has made the distinction: "Since the failure to comply with * * * a safety statute constitutes negligence per se, a party guilty * * * cannot excuse himself from compliance by showing that 'he did or attempted to do what any reasonably prudent person would have done under * * * similar circumstances.' A legal excuse * * * must be something that would make it impossible to comply with the statute * * * *.' ' "

*Id.* at 301–02, 486 P.2d at 1014–15.

The Court in *Haakonstad* accurately repeated what the Iowa court said of the Ohio opinion, but the Iowa opinion was not entirely accurate. The Ohio court, after noting that the trial court gave a sudden emergency instruction similar to that given in *Hackworth v. Davis* (conduct of a reasonably prudent person acting under emergency conditions), said this:

"Since the failure to comply with the provisions of a safety statute constitutes negligence per se, a party guilty of the violation of such statute cannot excuse himself from compliance by showing that '*he did or attempted to do what any reasonably prudent person would have done under the same or similar circumstances.*' A legal excuse, precluding liability for injuries resulting from the failure to comply with the statutory requirements respecting the operation of a motor vehicle on the public highways, must be something that would make it *impossible* to comply with the statute, something over which the driver has no control, an emergency not of the driver's making causing failure to obey the statute, or an

excuse or exception specifically provided in the statute itself. The instruction of the court in the instant case substituted the rule of ordinary care for the specific requirements of the statute. It made the duty of the defendant Harvey Transfer Company the same as it would have been had the statute not been enacted." (Emphasis in original.)

*Bush v. Harvey Transfer Co.*, 146 Ohio St. 657, 67 N.E.2d 851, 855–56 (1946).

In the Iowa case, the court there in addition to placing reliance on the foregoing passage from *Bush v. Harvey Transfer Co.*, also relied on this statement of a California court:

"'Evidence of due care * * * does not furnish an excuse or justification for the negligence presumed to arise on proof of violation of the ordinance.' *Gallichotte v. California Mutual Building & Loan Ass'n*, 4 Cal.App.2d 503, 41 P.2d 349, 351."

*Florke v. Peterson*, 245 Iowa 1031, 65 N.W.2d 372, 376 (1954).

If the Court is to accept the categorization of excuses or justifications of *Florke* as it did in *Bale*, and as it does today, it is crucial that it understand that case, and apply it *in all* particulars. *Florke* is not concerned with a defendant who claims to have been in the exercise of due care or control as he blithely violates a safety statute—but is concerned with *legal* excuses only. *Haakonstad* should have served to clarify any misunderstanding as to what the Court was talking about in *Bale*—*legal* excuses for violating a safety statute.

That this Court in *Bale* and the Iowa court in *Florke* were concerned only with *legal* excuses is made absolutely clear by examining the exact context in which the four categories were set forth in the Iowa case:

"We have set out at some length the testimony on plaintiff's behalf bearing on the question of his claimed 'legal excuse.'

"The evidence is not sufficient to pose a jury question. We have in earlier cases classified 'legal excuse' in four categories: 1. Anything that would make compli-

ance with the statute impossible; 2. Anything over which the driver has no control which places his car in a position violative of the statute; 3. An emergency not of the driver's own making by reason of which he fails to obey the statute; 4. An excuse specifically provided by statute. *Kisling v. Thierman*, supra, 214 Iowa at page 916, 243 N.W. 552, and *Amelsburg v. Lunning*, 234 Iowa 852, 857, 14 N.W.2d 680. For other statements of what constitutes legal excuse, see 65 C.J.S. Negligence, § 19h; *Larkins v. Kohlmeyer*, 229 Ind. 391, 98 N.E.2d 896, 900; *Bush v. Harvey Transfer Co.*, 146 Ohio St. 657, 67 N.E.2d 851, 855."

*Florke* at 374–75.

It should be amply clear that this Court has consistently held, in line with all authority, that a driver may not escape liability because he "prudently and carefully" violated a safety statute. The Court has heretofore enumerated the *legal* excuses which a driver might offer for his violation of a safety statute. What we observe here is that Gonzales' own testimony established that he followed too closely and at an excessive speed under conditions then and there existing—and though having no legal excuse for so doing, was given the benefit of an instruction which told the jury of not one, but *four* possibilities which they could consider as his excuse for having done so.

Given such an instruction, it is understandable that the jury would fail to comprehend that Gonzales had no excuse for following too closely or traveling too fast, in which event it is natural that the jurors' focus would be on Mrs. Mann—but for her car skidding on the ice the prima facie negligence of Gonzales would have caused no harm.

Concluding, the reader of the three opinions in this case will wonder as to the premise upon which the jury found negligence on the part of Mrs. Mann, it only appearing that her slow-moving vehicle slipped on the ice as she was negotiating a right turn. At oral argument a question in

search of an answer to that question was not satisfactorily answered.

Although the Mann complaint alleged the manner in which Gonzales was negligent, and those theories were presented to the jury with proper instruction, the Gonzales pleading only alleged the conclusion of negligence on the part of Mann, and the jury was given no instruction setting forth the Gonzales theory of plaintiff's negligence. I do not see this as an issue on the appeal, however, and it does not appear that Gonzales was ever asked to specify the acts allegedly negligent, nor was any instruction on the theory of plaintiff's alleged negligence requested.

It is mentionable, though, as an element compounding the erroneous giving of instruction No. 15. Notwithstanding that the law is generally that slipping on ice is not negligence in and of itself, absent conduct which may bring about the slipping, the jury here, by trying to apply instruction 15 could have had its attention diverted from the driving of Gonzales to the skidding of the Mann vehicle—and thereby saw an easy solution to the case and one which they would logically believe the trial court saw as within their province to accept.

A thorough study and analysis of the opinions in *Hackworth v. Davis, Bale v. Perryman, Dewey v. Keller, Werth v. Tromberg,* and *Haakonstad v. Hoff* convinces me that the Court today will soon discover that it has unsettled the principles of law announced and then clarified by the Court in those cases.